**INTERNATIONAL TANK TERMINALS, LTD., Plaintiff-Appellee,**

v.

**M/V ACADIA FOREST, her engines, boilers, etc., et al., Defendants.**

**SPECIAL CARRIERS, INC., Claimant-Appellee,**

v.

**SYSTEM FUELS, INC., Movant-Appellant.**

No. 76–2068.

United States Court of Appeals, Fifth Circuit.

Sept. 11, 1978.

Walter Carroll, Jr., New Orleans, La., for movant-appellant.

Louis J. Dutrey, Bertrand F. Artigues, New Orleans, La., for Int'l Tank Terminals.

J. Barbee Winston, Joseph P. Tynan, New Orleans, La., for Special Carriers, Inc.

Before HILL, RUBIN and VANCE, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This is an appeal from an admiralty case which presents a single issue: whether the district court properly denied the motion of appellant, System Fuels, Inc., to intervene in the pending law suit. We affirm.

This appeal indirectly involves five companies and centers upon their interrelationships. Plaintiff-appellee, International Tank Terminals, Ltd., (I.T.T.), is the owner of docking and oil storage facilities on the Mississippi River. Defendant A/S Molash Shipping Co. is the owner of the vessel involved, the M/V Acadia Forest. Defendant Special Carriers, Inc., pursuant to agreement with A/S Molash Shipping Co., is the demise charterer of the M/V Acadia Forest. Appellant System Fuels, Inc., in turn, under agreement with Central Gulf Lines, Inc., is the voyage charterer of the M/V Acadia Forest.

On April 5, 1973, the voyage charterer, appellant System Fuels, Inc., an oil dealer, entered into a lease with I.T.T. in which appellant agreed to lease the docking and oil storage facilities of I.T.T. The lease provided, in part: "Lessor [I.T.T.] warrants that the dock will be capable of berthing barges with a draft of 13 feet and tankers having a draft maintained by the Corps of Engineers for the Mississippi River.[1]" On December 20, 1973, and again on March 23, 1974, the M/V Acadia Forest allegedly caused damage to I.T.T.'s docking facilities while transporting appellant's fuel pursuant to the voyage charter arrangement. The vessel also allegedly suffered damage in the collision with the dock.

On December 18, 1974, plaintiff I.T.T. brought suit against defendant A/S Molash Shipping Co., through an *in rem* action against the M/V Acadia Forest, to recover for the damage to its docking and oil storage facilities. The demise charterer, defendant Special Carriers, Inc., answered the suit as owner *pro hac vice*.

Plaintiff I.T.T. charged in its complaint that the damage to its facilities was caused by the negligence of the defendants in the navigation of the vessel. Upon answering,

---

1. Appellant conceded at oral argument that depth had nothing to do with the cause of any damages incurred.

defendant Special Carriers, Inc. asserted a counterclaim against plaintiff I.T.T. alleging that I.T.T. was liable to Special Carriers, Inc. (and defendant A/S Molash Shipping Co.) for damages to the vessel due to I.T.T.'s negligence in failing to provide to defendants a safe and proper berth.

In addition to answering and counterclaiming against I.T.T., Special Carriers, Inc., by letter, notified its time charterer, Central Gulf Lines, Inc., of the suit. In the charter agreement between Special Carriers, Inc. and Central Gulf Lines, Inc. appeared a standard clause, known as a safe berth warranty, imposing upon Central Gulf Lines, Inc. the duty to designate a safe berth when directing the demise charterer (defendant Special Carriers, Inc.) to a given port. This same charter agreement also contained a clause requiring that all disputes arising therefrom be submitted to arbitration in New York. Accordingly, in its letter, Special Carriers, Inc. notified Central Gulf Lines, Inc. that it would seek recovery of any amount which it was required to pay I.T.T. in the law suit through arbitration against Central Gulf Lines, Inc. Central Gulf Lines, Inc., as an alternative, was given the option of assuming the defense of the action and being bound thereby.

As previously stated, Central Gulf Lines, Inc. had voyage chartered the vessel to appellant System Fuels, Inc. This agreement, as well, contained a safe berth clause, imposing upon System Fuels, Inc. the duty to designate a safe berth in which to dock the vessel. The agreement also contained a clause requiring all disputes between them to be submitted to arbitration in New York. Upon receipt of the Special Carriers, Inc. letter, Central Gulf Lines, Inc. notified System Fuels, Inc. by letter that it would seek recovery of any sums due Special Carriers, Inc. through arbitration against System Fuels, Inc. and offered System Fuels, Inc. the option of accepting the defense of the action and being bound thereby.

Absent the arbitration agreements between the parties, this case would not be unusual. As in typical cases in which in-

demnity is sought, the vessel owner would implead the demise charterer who would implead the time charterer who would implead the voyage charterer. In such a suit, in addition to the question of initial liability, it would be expected to be determined whether the safe berth clause required indemnity by the third party defendant, fourth party defendant, *et cetera*, in favor of its third party plaintiff, fourth party plaintiff, *et cetera*. However, in this suit, due to the reliance on the arbitration provisions, no additional parties were impleaded. The party logically expected to implead, Special Carriers, Inc., apparently prefers to insist upon arbitration rather than a court determination.

On October 11, 1975, appellant System Fuels, Inc. moved to intervene in the suit between I.T.T. and Special Carriers, Inc., as a party defendant. The district court denied that motion, and this appeal was taken.

In this case, as outlined above, Special Carriers, Inc., in effect, demands indemnity from Central Gulf Lines, Inc. which demands indemnity from appellant System Fuels, Inc., by both demanding that the party next in line assume its defense and, presumably, any liability. Yet Special Carriers, Inc. did not implead the party next in line (Central Gulf Lines, Inc.) because it is bound upon motion of the opposing party to arbitrate and it also appears to prefer to resolve any possible claim-over by invoking the right to arbitrate.

Appellant System Fuels, Inc., therefore, is in the position of a spectator to the main event, but appellant expects that if the vessel owner *pro hac vice* (Special Carriers, Inc.) loses, then a claim-over against appellant will be forthcoming through the arbitration process. Appellant is not content to stand by and await the outcome of the court contest. Instead, appellant would like to assist the vessel owner *pro hac vice* in winning the court contest, thus foreclosing any further proceedings.

If appellant had acknowledged its obligation to indemnify, then it would likely have been entitled to intervene as of right. *See*

*generally United States v. Perry County Bd. of Ed.*, 567 F.2d 277 (5th Cir. 1978); *Diaz v. Southern Drilling Co.*, 427 F.2d 1118 (5th Cir. 1970). Indeed, in this suit, it could simply have accepted the tender of defense and . defended the action. Appellant has been reluctant to take that course of action. It appears, indeed with some justification, that appellant does not accept the traditional notion that a safe berth warranty operates to impose liability upon the charter party who directs the vessel to a certain port. This notion has been under attack recently. *See generally Gilmore* and *Black, The Law of Admiralty* 200–07 (2d ed. 1975). Appellant apparently desires to defend the action, while reserving its right to walk away from the court contest unscathed should the defense be· inadequate and a judgment be suffered.

Thus, we are left with the conclusion that the only way the defendants can force Central Gulf Lines, Inc., and, in turn, appellant, into the suit is by foregoing the arbitration clauses in the charter agreements. The only way appellant can get its oar into the defense waters is by acknowledging that as an indemnitee it has an interest to protect. It equally is clear that the defendants are relying upon the arbitration provisions. We are not inclined to force a judicial resolution of the possible claim-over against appellant when, upon chartering the vessel, it expressly agreed to arbitrate such a claim.

It is axiomatic that Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention: intervention as of right and permissive intervention. Appellant argues first, that it had a right to intervene under Rule 24(a)(2) and alternatively, that the trial court abused its discretion in refusing to permit intervention pursuant to Rule 24(b). We disagree.

■ In seeking to intervene as of right, appellant must satisfy the requirements of Rule 24, which provides in part:

(a) INTERVENTION OF RIGHT.

　Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicants interest is adequately represented by existing parties.

It is well-settled that to intervene as of right each of the four requirements of the rule must be met: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a . practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *See, e. g., United States v. Perry County Bd. of Ed., supra* ; *Diaz v. Southern Drilling Co., supra.*

■ If an intervenor fails to meet one of these requirements, then it cannot intervene as a matter of right. Here our focus is on the fourth requirement. Since we conclude that the fourth requirement has not been satisfied, we need not discuss the other requirements. In this case we easily conclude that the appellant has not made a showing that the defendants will not adequately represent the appellant's interest.

■ The United States Court of Appeals for the Fourth Circuit, in *Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976), stated the standard for determining the adequacy of representation:

　When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.

*See also Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844 (5th Cir. 1973) and cases cited. It is clear from our summary of the interrelationships among the

five companies involved here that the appellant and the defendants have the same objective in the present suit. The possibility that future arbitration might occur in which the interests of the defendants and the appellant might clash does not demonstrate the necessary adverse interest in the present suit. Appellant has presented no evidence of collusion or nonfeasance, or even contended that such exists. Thus, we hold appellant was not entitled to intervene as of right.

 In view of the arbitration agreement between the defendants, Central Gulf Lines, Inc. and appellant, coupled with appellant's apparent attempt to avoid that obligation by way of intervention, it can hardly be said that the district court abused its discretion by denying appellant permission to intervene under the provisions of Rule 24(b).[2] *See United States v. Perry County Bd. of Ed., supra,* and cases cited.

It, therefore, follows that the judgment of the district court should be, and is,

AFFIRMED.

---

2. Fed.R.Civ.P. 24 provides, in part:

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.