Gene HOWSE, Suzanne Norris and Samantha Stevens, Plaintiffs,

v.

S/V "CANADA GOOSE I", et al., Defendants.

WINDWARD TERMINALS, INC., Intervening Cross-Plaintiff-Appellee,

v.

TRACOR MARINE, Intervening Plaintiff/Cross-Defendant/Third-Party Plaintiff-Appellant,

v.

LAUDANIA OCEAN TERMINAL, INC., Third-Party Defendant.

No. 79–2969.

United States Court of Appeals, Fifth Circuit. Unit B

April 2, 1981.

Smathers & Thompson, Linwood Anderson, Maria E. Arista, Keith E. Hope, Miami, Fla., for Tracor Marine.

J. James Donnellan, III, Miami, Fla., for Windward Terminals, Inc.

Before HILL and FRANK M. JOHNSON, Jr., Circuit Judges and SCOTT*, District Judge.

PER CURIAM:

This appeal is taken from a final judgment on a cross-claim brought by one would-be intervenor against another in the original suit in admiralty. The case turns upon the propriety of the district court's decision to allow the cross-claimant Windward Terminals, Inc. (Windward) [1] to intervene to assert a cross-claim against Tracor Marine (Tracor). Guided by *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964 (5th Cir.1978) and *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir.1977), we conclude that intervention was inappropriate in the circumstances of this case and, accordingly, reverse.

---

* District Judge of the Middle District of Florida, sitting by designation.

1. As noted in the district court's findings of fact and conclusions of law, W. Harmon Nickless is the real party in interest, having retained by agreement Windward's claim against Tracor Marine when he sold Windward Terminal's Inc. Pursuant to Rule 25(c), Fed.R.Civ.P., the action was continued in the name of Windward Terminals, Inc. In the interest of clarity and simplicity, we refer to the appellee as Windward in this opinion.

Three former crew members brought the original action *in rem* to recover unpaid wages against the S/V CANADA GOOSE I, which at time of filing was docked at Tracor's facilities for repair. The vessel was attached on February 12, 1975, and the district court appointed Tracor substitute custodian of the vessel in place of the United States Marshal. On June 6, 1975, during the course of the litigation, Tracor allowed the vessel to be removed from its docks by agents of the owner without court approval. Shortly after leaving the Tracor premises, however, the vessel went aground adjacent to the Windward facility. Upon request, Windward hauled the leaking vessel to its dock facilities where she stayed until sold by the marshal more than four months later. Windward thus became *de facto* substitute custodian of the vessel on June 6, 1975, supplying substantial custodial services at Tracor's request.[2]

Subsequently, a dispute developed between Tracor and Windward over who should be caring for the vessel and who should be paying for it. On September 24, 1975, Tracor intervened in the main action, filing an intervening complaint against the vessel in an attempt to assert a lien for the balance due on repair work ordered by the owner and for the costs of preserving the vessel prior to June 6, 1975. Although both Tracor and Windward moved the district court for an order clarifying custody of the vessel, no order was entered. At a subsequent hearing, however, the court confirmed Tracor's official custodianship, but recognized the custodial expenses of both Windward and Tracor. Accordingly, the district court ordered that $20,740.00 be taxed against the vessel in favor of Tracor and that $20,117.81 be taxed against the

vessel in favor of Windward. Meanwhile, the trial of the main action was concluded, and the district court entered final judgment for the plaintiff seamen. The vessel was sold on October 20, 1975, and the sale confirmed on October 30, 1975. Unfortunately, the high bid was only $700.00. Neither custodian received any of the proceeds of sale.

On October 29, 1975, Windward, still a non-party to the main action,[3] filed a motion for leave to file a cross-claim against Tracor, alleging a claim in admiralty for breach of contract. Tracor opposed the motion. The district court, however, construed the motion as a motion to intervene, granted the motion, and ordered Windward's cross-claim to be filed on November 13, 1975. The cross-claim was twice amended, the final version asserting claims based on breach of contract, indemnification, and constructive trust. Tracor defended *inter alia* on grounds of lack of jurisdiction, improper intervention, and failure to state a claim for which relief could be granted.

After a non-jury trial, the district court concluded that Tracor had breached its duty of custodianship and, therefore, was liable to Windward for its costs and charges which arose as a result of that breach. The propriety of Windward's intervention was neither argued at trial nor addressed in the district court's findings and conclusions. On July 20, 1979, the district court entered a final judgment awarding Windward $27,-664.20 together with prejudgment interest against Tracor.

On appeal Tracor raises four issues. One is directed to the propriety of Windward's intervention and three attack the district

2. These are the essential facts found by the district court. The details of the dispute which arose between Windward and Tracor are insignificant to our decision. The important point is that the dispute was defined by the facts and law surrounding the movement of the vessel *in custodia legis* and Windward's inability to get rid of the vessel or obtain payment for the expense of preserving the vessel.

3. Windward had filed a previous motion on September 19, 1975, denominated "Motion for

Clarification of Custodianship and for Leave to Intervene." Curiously, the topic of intervention was not addressed in that motion. The later Motion for Leave to File Cross-claim, however, constituted at least a colorable attempt to comply with Rule 24(c), Fed.R.Civ.P., which provides in pertinent part that "[t]he motion [to intervene] shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought."

court's jurisdiction, rationale concerning liability, and damage award, respectively. Because we conclude that the district court erred in allowing Windward to intervene, we find it unnecessary to address the latter three issues. Rule 24 of the Federal Rules of Civil Procedure provides for intervention as a matter of right and for permissive intervention.[4] Rule 24(a) and (b). The district court's order of November 13, 1975, allowing Windward to intervene offers no clue as to the basis for that decision.[5] We conclude that Windward failed to satisfy the requirements of Rule 24 with respect to both intervention of right and permissive intervention.

## INTERVENTION OF RIGHT UNDER RULE 24(a)(2)

■ In order to intervene as a matter of right under Rule 24(a)(2), all four of the requirements set forth in the rule must be met. First, the application for intervention must be timely. Next, the applicant must have an interest relating to the property or transaction which is the subject of the action, and the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest. Finally, it must appear that the applicant's interest is inadequately represented by the existing parties to the suit. *International Tank Terminals,* *Ltd. v. M/A Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978).

■ Tracor urges us to hold that Windward delayed too long in seeking intervention after final judgment had been entered and the vessel sold. Timely application is a requirement for both intervention of right and permissive intervention. Rule 24(a) and (b). The question of timeliness is largely within the district court's discretion. *Stallworth v. Monsanto Co.,* 558 F.2d 257, 263 (5th Cir.1977). We assume that the district court concluded that the application, such as it was, was timely.[6] That determination can only be reversed for abuse of discretion. *Id.* Although this Court has been reluctant to approve intervention after final judgment, there are circumstances in which post-judgment intervention may be justified. *See McDonald v..E. J. Lavino Co.,* 430 F.2d 1065, 1072 (5th Cir.1970). Applying the guidelines set forth in *Stallworth,* we find no basis for concluding that the district court abused its discretion on the issue of timeliness. 558 F.2d at 263–66.

■ While the significance of the precise nature of an intervenor's interest has declined since the 1966 amendments to Rule 24, *see Atlantis Development Corp. v. United States,* 379 F.2d 818, 823–25 (5th Cir. 1967), intervention of right still requires "a direct, substantial, legally protectable inter-

---

4. Rule 24(a)(2) provides:
   Upon timely application anyone shall be permitted to intervene in an action:
   
   \*   \*   \*   \*   \*   \*
   
   (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
   Rule 24(b)(2) provides, in pertinent part:
   Upon timely application anyone may be permitted to intervene in an action:
   
   \*   \*   \*   \*   \*   \*
   
   (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
   
   \*   \*   \*   \* ·  \*   \*
   
   In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

5. The order states:
   THIS CAUSE came before the Court upon the following motion of WINDWARD TERMINALS, INC.:
   MOTION FOR LEAVE TO FILE CROSS–CLAIM
   The Court having considered the record, it is—
   ORDERED and ADJUDGED that the Court will construe the motion of WINDWARD TERMINALS, INC. as a Motion to Intervene and, accordingly, will grant said motion. Further, it is—
   ORDERED AND ADJUDGED that the cross-claim of WINDWARD TERMINALS is deemed filed as of the date of this Order.

6. The district court order of November 13, 1975, contains no express conclusions concerning timeliness. See note 5, *infra.*

est in the proceedings." *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) quoting *Hobson v. Hansen*, 44 F.R.D. 18, 24 (D.C.D.C.1968). At the stage of litigation at which intervention was granted here, Windward's only remaining interest was confined to its cross-claim against Tracor. The interest in recovering damages in the amount of its custodial expenses from Tracor was insufficiently related to the main action to justify intervention as a matter of right under Rule 24(a)(2).

We distinguish two completely different interests which Windward sought to assert and protect at different times in this action. Windward cared for the vessel from June 6, 1975, until approximately October 30, 1975, as *de facto* substitute custodian. Notwithstanding any agreement or contract with Tracor to provide this custodial care, Windward clearly had an interest in obtaining an award of administrative expenses for this service. That interest was shared by Tracor, which had cared for the vessel from February 12, 1975, until June 6, 1975. Despite the fact that Tracor remained the official substitute custodian, the district court clearly recognized, accepted, and adjudicated the interests of both Windward and Tracor in awarding administrative expenses against the vessel in favor of Tracor for $20,740.00 and in favor of Windward for $20,117.81. Neither of these interests was satisfied, however, by the sale of the vessel.

Subsequently, Windward, though still not a party to the main action, attempted to file its cross-claim against Tracor. As amended and ultimately tried before the court, the cross-claim asserted rights arising from a contract or agreement between Windward and Tracor. Windward's interest was thus confined to recovery of its custodial expenses from Tracor. This cross-claim interest was unrelated to the "property or trans-action" which was the subject of the main action. Windward's cross-claim asserted no interest in the property, i. e. the vessel. It is correctly characterized as a claim *in personam* against Tracor. Indeed, as previously noted, Windward's interest in the vessel had already been adjudicated. Moreover, the counterclaim had no connection whatever to the wage claims which formed the basis of the main action. The district court's disposition of those claims neither impeded nor impaired Windward's interest. At all times Windward was free to pursue that interest in a separate action against Tracor.

Windward urges us to eschew a "myopic fixation upon 'interest'" and be guided instead by considerations of efficiency and due process in determining whether intervention should be allowed as a matter of right. The authority for this proposition, though not cited in Windward's brief, is found in *Smuck v. Hobson*, 408 F.2d 175, 178–80 (D.C.Cir.1969) (en banc) citing *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir. 1967). It is contended that efficiency and due process are served by allowing the duly appointed substitute custodian and the *de facto* substitute custodian of a vessel which was the subject of the main action to dispose of their obligations between each other in the same action.[7]

We have previously adopted a flexible approach to the interest issue. *United States v. Perry County Board of Education*, 567 F.2d 277 (5th Cir.1978). What Windward asks, in effect, is that we now adopt a standard much broader than that espoused by the District of Columbia Circuit in *Smuck v. Hobson, supra.* In both *Smuck v. Hobson* and *Neusse v. Camp*, the court of appeals was presented with a situation in which the applicant for intervention had

---

7. Though fully cognizant of the dangers inherent in conclusions reached on the basis of hindsight, we feel constrained to note that the main action in this instance was disposed of in less than a year. Some three-and-a-half years and three district court judges later, a judgment was finally rendered on Windward's cross-claim. It is difficult to understand how efficiency was served by allowing Windward to append its cross-claim againt Tracor to the original action. *Cf. Atlantis Development Corp. v. United States*, 379 F.2d 818, 819 (5th Cir.1967) (denial of intervention, apparently to avoid delay, generated more delay). Moreover, it is not clear how due process would have been offended by requiring Windward to bring a separate action.

some direct, though non-pecuniary, interest in the matters which were adjudicated in the main action. The issue was whether the nature of that interest satisfied the requirements of Rule 24(a)(2). *Smuck v. Hobson*, 408 F.2d at 178–80, *Neusse v. Camp*, 385 F.2d at 699–700. The en banc court in *Smuck v. Hobson* suggested that the nature of the interest is less important than whether disposition of the main action may result in any practical harm to the applicant and whether the applicant's interest is already adequately represented in the main action. 408 F.2d at 180. In the case at bar, this Court is confronted with an intervenor that had no interest in the main action. The rationale of *Smuck v. Hobson* cannot be stretched to include these circumstances. In the absence of some interest in the main action, the remaining considerations of practical harm and adequacy of representation become irrelevant.

Windward also urges us to consider that the United States Supreme Court has allowed intervention of right beyond the confines of Rule 24(a). Windward's reliance upon *Missouri-Kansas Pipeline Co. v. United States*, 312 U.S. 502, 61 S.Ct. 666, 85 L.Ed. 975 (1941) and *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) for that proposition, while correct, fails to note the distinguishing features of those cases. First, of the two cases only *Cascade* deals with the same amended version of Rule 24(a) that concerns us in the instant case.[8] Second, both cases presented the Supreme Court with a situation in which post-judgment applicants for intervention were seeking the right to protect interests which were directly and adversely affected by the district court's disposition[9] of an underlying antitrust suit. The instant case does not fit within this framework. Windward had no interest which was affected by the district court's disposition of the main action. This is, of course, no more than a corollary to the fact that Windward has no interest in the property or transaction which was the subject of the main action. We conclude that the cited cases provide no authority for the expansion of the right to intervene beyond the limiting requirements set forth in Rule 24(a) under the circumstances of this case. Windward was bound to meet these requirements and failed to do so. The district court should have denied intervention as a matter of right.

## PERMISSIVE INTERVENTION UNDER RULE 24(b)(2)

■■ On this issue we will be brief. It is true that Rule 24(b)(2) "dispenses with any requirement that the intervenor shall have a direct or pecuniary interest in the subject of the litigation." *SEC v. United States Realty and Improvement Co.*, 310 U.S. 434, 459, 60 S.Ct. 1044, 84 L.Ed. 1306 (1940); *In re Estelle*, 516 F.2d 480, 485 (5th Cir.1975). The decision to permit intervention under Rule 24(b)(2), however, requires a threshold determination that "the applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). The determination is not discretionary; it is a question of law. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir.1977). If this requirement is met, then the district court must exercise

---

**8.** In fact, the Supreme Court devoted most of the analysis in *Cascade* to the pre–1966 Rule 24(a)(3). The present version of Rule 24(a) was held applicable only to one of the three intervenors. The court stated, without elaboration:

Since the entire merits of the case must be reopened to give California and Southern California Edison an opportunity to be heard as of right as intervenors, we conclude that the new Rule 24(a)(2) is broad enough to include Cascade also.

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 136, 87 S.Ct. 932, 937, 17 L.Ed.2d 814, 819 (1967).

**9.** *Missouri-Kansas Pipeline Co. v. United States* involved a consent decree which adversely affected the applicant's competitive opportunities. 312 U.S. 502, 504–05, 61 S.Ct. 666, 667, 85 L.Ed. 975, 979 (1941). *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.* concerned a settlement agreement which applicants challenged as contrary to a prior Supreme Court order requiring divestiture and adverse to their interests. 386 U.S. 129, 131–33, 87 S.Ct. 932, 935, 17 L.Ed.2d 814, 817 (1967).

its discretion in determining whether to permit intervention. *Id.* Windward's cross-claim against Tracor contained no questions of fact or law in common with the main action. Windward's previous claim for administrative expenses against the vessel had been previously adjudicated. We conclude that Windward failed to meet the threshold requirement and, thus, was not entitled to permissive intervention under Rule 24(b)(2).

In conclusion, whether based upon Rule 24(a) or 24(b), the district court's order of November 13, 1975, allowing Windward to intervene to assert a cross-claim against Tracor, constituted reversible error. Accordingly, we REVERSE that order, VACATE the judgment of July 18, 1979, against Tracor Marine, and REMAND this case to the district court for dismissal of Windward's cross-claim and for such further proceedings as may be necessary.

REVERSED, VACATED, AND REMANDED.

