740 F.2d 350
 39 Fed.R.Serv.2d 1270
 John BUSH, et al., Plaintiffs-Appellees,
v.
Robert O. VITERNA, Individually and in his official capacity
as Executive Director, Texas Commission on Jail
Standards, et al., Defendants,
Texas Association of Counties, Intervenor-Appellant.
 No. 83-1613.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 20, 1984.
 
 Bickerstaff, Heath & Smiley, Steve Bickerstaff, Ann Clarke Snell, Austin, Tex., for intervenor-appellant.
 James C. Harrington, Edward F. Sherman, Austin, Tex., Steven Ney, Washington, D.C., for plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before RANDALL, TATE and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Texas Association of Counties (the "Association") seeks review of an order of the United States District Court for the Western District of Texas denying its motion to intervene as a matter of right or on a permissive basis, pursuant to Fed.R.Civ.P. 24(a)(2) and (b)[1] as defendant in this prisoner's civil rights action. We hold that the Association was properly denied intervention.
 
 
 2
 I. FACTUAL AND PROCEDURAL BACKGROUND.
 
 
 3
 The underlying action in which the Association requested intervention is a prisoner's civil rights action originally filed in federal district court in 1978 seeking damages and declaratory and injunctive relief pursuant to 42 U.S.C. Sec. 1983 (1982) for violations of federal constitutional rights. The original suit was a class action against officials of Bell County, Texas and the executive director of the Texas Commission on Jail Standards (the "Commission")[2] alleging that conditions and practices of confinement at the Bell County Jail were inconsistent with federal constitutional law and state statutory and regulatory requirements. The original suit alleged two classes: (1) a plaintiff class of inmates and pre-trial detainees aggrieved by the conditions and treatment of prisoners under the policies in effect at the Bell County Jail; and (2) a defendant class "of the individuals and governmental bodies responsible for operating the Texas County Jails in compliance with minimal [sic] constitutional and state statutory standards." The executive director of the Commission and Bell County officials were named as defendants.
 
 
 4
 In October 1980, the plaintiffs' individual claims against Bell County were severed from the class action claims against the Commission. Subsequently, a consent decree in "full settlement of all of plaintiffs' claims against Bell County and all its officials as raised in civil action No. W-78-CA-106, which could ever be raised resulting from any of the events set forth in plaintiffs' complaints" was filed. The consent decree stated that "conditions" on the night of plaintiffs' arrest do not reflect current conditions in Bell County and its jail is officially certified as being in present compliance with law. The consent decree further provided that it "shall be a complete bar and res judicata to any and all present, future or other claims of plaintiffs arising from or related to the events made the basis of the plaintiffs' claims urged in this case."
 
 
 5
 In their amended complaint filed in the severed action, the plaintiffs substituted a state-wide plaintiff class for their original county-wide class, and dropped their defendant class. In the severed claims, plaintiffs sued only the members of the Commission. In their amended complaint, plaintiffs included the following prayer for relief:
 
 WHEREFORE, Plaintiffs pray that this Court:
 
 6
 1. Issue a declaratory judgment that Defendants' acts, omissions, practices, and policies have denied Plaintiffs due process and equal protection of the laws in violation of the Fourteenth Amendment, have caused them to be subject to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and have violated the rights, privileges, and immunities guaranteed to them by the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments to the Constitution of the United States.
 
 
 7
 2. Enter a judgment, order, and decree permanently prohibiting the Defendants, their employees, agents or successors, and all those acting in concert or participating with them from:
 
 
 8
 a. Failing or refusing to conduct or cause to be conducted meaningful and exacting inspections of the jails;
 
 
 9
 b. Failing or refusing to properly evaluate and monitor the conditions under which Plaintiffs and members of their class are confined so as to detect and report any and all violations of the Constitution or Texas law, including the Texas jail standards promulgated pursuant to Tex.Civ.Stat. Art. 5115 and 5115.1;c. Failing or refusing to take steps necessary or appropriate to eliminate unconstitutional conditions of confinement in the jails and violations of Texas law, including the Texas jail standards; and
 
 
 10
 d. Depriving Plaintiffs or members of their class of their constitutional rights.
 
 
 11
 3. Enter a judgment, order and decree requiring Defendants to promulgate new regulations that fully protect the constitutional rights of prisoners including, but not limited to, adequate medical care, contact visitation, daily indoor and outdoor exercise and recreation, mail privileges, access to legal materials, and freedom from unnecessary use of physical force.
 
 
 12
 4. Enter a judgment, order and decree requiring Defendants to confine Plaintiffs, if at all, only under conditions that comport with the Constitution of the United States and the laws of Texas.
 
 
 13
 The documents filed and appearances made by the plaintiffs in this action indicate that the plaintiffs' claims principally relate to the standards adopted by the Commission,[3] the Commission's inspection procedures,[4] the Commission's practice of granting variances to counties whose jails do not comply with the jail standards,[5] and the Commission's enforcement practices.[6] No relief is sought against the individual counties.
 
 
 14
 Soon after a state-wide class was certified in December, 1982, the Association notified the court and the parties that counties were concerned about the suit. Citing county interests; the confused state of the pleadings; the lack of progress toward resolving the substantive issues in these proceedings; and the scheduling of a seminar for January 28, 1983, at which counsel for the parties would make presentations to county officials and answer their questions concerning the suit, the Association requested leave to appear amicus curiae and to refrain from submitting argument "until the issues are better focused and until the counties of Texas have an opportunity through the seminar and other informative efforts to become familiar with this litigation."
 
 
 15
 Following the January seminar, county officials discussed the case and requested the Association to intervene in the action. At its next meeting, on February 21, 1983, the Association's board voted to seek intervention if a sufficient number of counties voluntarily issued orders through their commissioner's courts in support of intervention and created a reasonably adequate litigation fund. After 139 of the 254 Texas counties had joined the intervention effort and 133 of those had contributed to the litigation fund, the Association moved to intervene. Both intervention of right and permissive intervention were denied by the district court. The district court also denied the Association's application for a stay pending appeal.
 
 
 16
 II. INTERVENTION OF RIGHT.
 
 
 17
 This court, sitting en banc, has recently restated the test for intervention of right under Fed.R.Civ.P. 24(a)(2):[7]
 
 
 18
 "It is well-settled that to intervene as of right each of the four requirements of the rule must be met: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit."
 
 
 19
 New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5th Cir.1984) (en banc) (quoting International Tank Terminals, Ltd. v. M/V Acadia Forest, 579 F.2d 964, 967 (5th Cir.1978)). The district court found that the Association failed to meet all four of these requirements. If a would-be intervenor fails to meet any one of these requirements then it cannot intervene as a matter of right. Howse v. S/V "Canada Goose I", 641 F.2d 317, 320 (5th Cir.1981); International Tank Terminals, Ltd. v. M/V Acadia Forest, supra, at 967. Our focus here is upon the fourth requirement. Since we conclude that the Association's interests are adequately represented by the Commission,[8] we need not address the question whether the Association has met the other three requirements for intervention of right.[9]
 
 
 20
 The requirement that an intervenor not be adequately represented by existing parties "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). However "minimal" this burden may be, it cannot be treated as so minimal as to write the requirement completely out of the rule. See Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 201, 205 (7th Cir.1982). Thus, we find, on the facts of this case, that the Association has failed to carry even this slight burden of showing that their interests will not be adequately represented by the Commission.
 
 
 21
 This circuit has held that " '[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.' " International Tank Terminals, Ltd. v. M/V Acadia Forest, supra, at 967 (quoting Commonwealth of Virginia v. Westinghouse Electric Corp., 542 F.2d 214, 216 (4th Cir.1976)). See also Ordinance Container Corp. v. Sperry Rand Corp., 478 F.2d 844, 845 (5th Cir.1973) ("since the ultimate objectives of both [intervenor and plaintiff] ... are identical, the presumption arises that the interests of intervenor will be adequately protected by [plaintiff]"); Meridian Homes Corp. v. Nicholas W. Prassas & Co., supra, at 205 ("Although the burden of proof on the party seeking to show lack of adequate representation is minimal, ... where it is established that the parties have the same ultimate objective in the underlying action, the intervenors must demonstrate, at the very least, that some conflict exists"); 3B Moore's Federal Practice p 24.07, at 24-71 & n. 11 (2d ed. 1982) (when the applicant and an existing party have the same ultimate objectives in the litigation, the application should be denied unless a showing of inadequate representation is made). A careful reading of the record in this case, including all papers filed by both the Association and the Commission, shows that, in this lawsuit, both have the same objectives--to uphold the present standards and practices of the Commission, and to resist any changes in those standards and practices sought by the plaintiffs. Given that the objectives of the Association in this lawsuit are identical to those of the Commission, it must show "adversity of interest, collusion, or nonfeasance." International Tank Terminals, supra, at 967.
 
 
 22
 The Association makes no claim of collusion or nonfeasance; it attempts only to show adversity of interest. However, the Association makes no showing of adversity of interest in this proceeding. The Association asserts that, because the counties and the Commission may end up on opposite sides of the table in some future litigation, we should find adversity of interest and hold that the Association's interests are not being adequately represented in this lawsuit. The Association points out that the Commission may, at some future time, take enforcement action against a county, which the county has a right to challenge in state court. Additionally, the counties may at some future time wish to challenge in state court jail standards arising out of this litigation, pursuant to the Texas Administrative Procedure Act, Tex.Rev.Civ.Stat.Ann. art. 6252-13a, Sec. 12 (Vernon Supp.1984); in such an action, the defendant will be the Commission. In any of these actions, the Commission will be required to defend against the counties any standards or other orders concerning Commission procedures that may result from the present litigation. Thus, the Association argues, the interests of the Association and the Commission are adverse.
 
 
 23
 However, this court has previously held that the possibility that the interests of intervenors and defendants might clash in some future dispute does not demonstrate the necessary adverse interest in a present suit. International Tank Terminals, supra, at 968. In International Tank Terminals, plaintiff brought suit against a vessel owner to recover for damage to its docking and oil storage facilities. Special Carriers, Inc., the demise charterer of the vessel, answered the suit as owner pro hac vice. Systems Fuels, the voyage charterer of the vessel, sought to intervene in the suit, its objective to absolve Special Carriers of liability. Thus, Systems Fuels' objective in the lawsuit was identical to Special Carriers'. We then undertook to determine whether there was adversity of interest. Systems Fuels argued that its and Special Carriers' interests were adverse because, under its voyage charter contract, if Special Carriers was held liable, it would then have to undertake arbitration between itself, Special Carriers, and the time charterer, Central Gulf Lines, Inc., in which its interests would be adverse to that of Special Carriers. In that arbitration, Special Carriers would be seeking to pass on its liability from the initial lawsuit to Central Gulf and Systems Fuels through invocation of a safe berth warranty clause. In finding that the interest of Systems Fuels was adequately represented by Special Carriers, we held:
 
 
 24
 The possibility that future arbitration might occur in which the interests of [Special Carriers] and [Systems Fuels] might clash does not demonstrate the necessary adverse interest in the present suit. [Systems Fuels] has presented no evidence of collusion or nonfeasance, or even contended that such exists. Thus, we hold [Systems Fuels] was not entitled to intervene as of right.
 
 
 25
 579 F.2d at 968.
 
 
 26
 Thus, International Tank Terminals teaches that adversity of interest must be shown in the present proceeding and may not be inferred from the possibility of adversity in some future proceeding. The Association has failed to show the requisite adversity of interest in the present proceeding. Rule 24(c) requires that a motion for intervention "be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Pursuant to that rule, the Association filed an "Answer in Intervention," which is particularly instructive as to the posture the Association takes in this case vis-a-vis the Commission. The Association's answer takes virtually identical positions to those taken by the Commission in its answer. Indeed, the Association's answer affirms in glowing terms its confidence in the conduct of the Commission, stating that "the Commission has been in existence for a relatively short time during which it has accomplished a great deal toward resolving the complex, disparate, and often intractable problems of jail administration in Texas counties." The Association's answer, as did the Commission's, denies each of the substantive claims of the plaintiffs. The Association's answer also sets forth several affirmative defenses: (1) the court should not grant any relief that would alter variances previously granted by the Commission; (2) the court should dismiss plaintiffs incarcerated in counties involved in ongoing litigation; (3) the court should dismiss plaintiffs held in jails that are certified as meeting or exceeding constitutional standards; and (4) the broad sweep of plaintiffs' allegations presents problems of possible interference with a complex state regulatory scheme, requiring abstention by the federal courts. Each one of these issues has been urged by the Commission in this case. The Association has not indicated a single issue on which it and the Commission differ. The Association has not demonstrated that it has anything to contribute to this lawsuit beyond underlining the positions already taken by the Commission or that the Commission will not adequately present those common positions. In short, the same positions and defenses will be presented in this suit, whether or not intervention is allowed. This case is thus distinguishable from prior cases in which courts have found an applicant's interest inadequately represented: this is not a case in which the party with whom the applicant would be aligned has taken a position in direct opposition to the intervenor, Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders Assoc., 646 F.2d 117 (4th Cir.1981); this is not a suit in which no existing party has voiced applicant's concerns, Stallworth v. Monsanto Co., 558 F.2d 257 (5th Cir.1977); this is not a case where the applicant has a defense not available to the present defendant, Natural Resources Defense Council v. United States Nuclear Regulatory Commission, 578 F.2d 1341 (10th Cir.1978); this is not a suit in which it is clear that the applicant will make a more vigorous presentation of arguments than existing parties, New York Public Interest Research Group, Inc. v. Regents of University of State of New York, 516 F.2d 350 (2d Cir.1975); this is not a suit in which no party views the applicant's claims favorably, Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1125 (5th Cir.), cert. denied sub nom. Trefina A.G. v. United States, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). Indeed, this case is more closely aligned with those cases in which courts have determined that the burden of showing inadequacy of representation has not been met. See International Tank Terminals, Ltd. v. M/V Acadia Forest, supra; Dilks v. Aloha Airlines, 642 F.2d 1155 (9th Cir.1981) (intervenor, whose position on issues was the same as existing party, suggested nothing it would bring to the proceeding that present party, in its own interest, would not be equally motivated to urge); Associated Industries of Alabama v. Train, 543 F.2d 1159 (5th Cir.1976) (in suit against officials of EPA challenging validity of water quality standards for Alabama, State of Alabama was not allowed to intervene because position of Alabama was identical to that of EPA, there was no showing that there was a defense or claim on behalf of Alabama that could not be asserted by EPA, and there was no aspect of the case that would be illuminated by Alabama's presence in the suit); United States v. Moore, 485 F.2d 1165 (5th Cir.1973) (any error in denying taxpayer's motion to intervene not prejudicial since taxpayer adequately represented by existing party who sought to assert precisely the position taxpayer sought to raise). Therefore, this is not a case in which we can say that the counties are "without a friend in this litigation." Atlantis Development Corp. v. United States, 379 F.2d 818, 825 (5th Cir.1967).
 
 
 27
 The true concern of the Association in this case seems to be that the Commission may at some point in the future decide to settle this case. However, the mere possibility that a party may at some future time enter into a settlement cannot alone show inadequate representation. See Weller v. Actors' Equity Association, 93 F.R.D. 329, 330 (S.D.N.Y.1981) (mere conclusory allegations that present party may enter into a settlement insufficient to show inadequate representation). Cf. Bumgarner v. Ute Indian Tribe of Uintah and Ouray Reservation, 417 F.2d 1305, 1308 (10th Cir.1969) (tactical differences do not make inadequate the representation of those whose interests are identical); Acuff v. United Papermakers, 404 F.2d 169 (5th Cir.), cert. denied, 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1968) (decision not to take an appeal does not show inadequate representation). If this were so, the requirement that the would-be intervenor show inadequacy of representation would be effectively written out of the rule, for it is always a possibility that the present parties will settle a lawsuit. A party's interest may be adequately represented in settlement negotiations as well as in adversarial proceedings. Under those circumstances, and assuming that the ultimate objectives of the Association and the Commission remain aligned, the burden upon the Association would be the same as it is here--to show adversity of interest.
 
 
 28
 Having failed to show that the Commission, one-third of the members of which are themselves county officials, has a position adverse to that of the counties, the Association has failed to overcome the presumption that its interests are adequately represented by the existing defendants.[10] Thus, the Association is not entitled to intervention of right.[11] The district court's denial of intervention of right is affirmed.
 
 
 29
 III. PERMISSIVE INTERVENTION.
 
 
 30
 Permissive intervention is provided for by Fed.R.Civ.P. 24(b)(2):
 
 
 31
 Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common .... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
 
 
 32
 It is undisputed that clause (1) is wholly inapplicable here.
 
 
 33
 The district court denied the Association's application for permissive intervention. Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied. United Gas Pipe Line Co., supra, at 471; see also 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1913, at 551 (1972). Accordingly, when asked to review a denial of permissive intervention, our task is not to determine whether the factors of Rule 24(b) were present, but is rather to determine "whether the trial court committed a clear abuse of discretion in denying the motion." Korioth v. Briscoe, 523 F.2d 1271, 1278 (5th Cir.1975). This court has never reversed a denial of permissive intervention under Rule 24(b) solely for an abuse of discretion, and such a decision by any federal appellate court has been termed "so unusual as to be almost unique." United Gas Pipe Line Co., supra, at 471.
 
 
 34
 In acting on a request for permissive intervention, it is proper for the court to consider the fact that the Association has been granted amicus curiae status in this case. United Gas Pipe Line Co., supra, at 472. Indeed, this seems to be the very type of case envisioned by Judge Wyzanski in Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc., 51 F.Supp. 972, 973 (D.Mass.1943), when he stated:
 
 
 35
 It is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.
 
 
 36
 We believe that, in a case such as this, the position of amicus, which the Association already possesses, is more appropriate than an intervention with full-party status.
 
 
 37
 In sum, as to permissive intervention, we do not find any extraordinary circumstances in this case as would justify our determining that the district court clearly abused its discretion. We accordingly dismiss this portion of the appeal. See Woolen v. Surtran Taxicabs, Inc., 684 F.2d 324, 331 (5th Cir.1982).
 
 
 38
 The judgment of the district court is AFFIRMED insofar as it denies intervention of right; in all other respects, the appeal is DISMISSED.
 
 
 
 [1]
 The law of this circuit is clear that the denial of a motion to intervene of right under Rule 24(a) is appealable. Woolen v. Surtran Taxicabs, Inc., 684 F.2d 324, 330 (5th Cir.1982). In contrast, the denial of a motion for permissive intervention under Rule 24(b) is not appealable unless there is an abuse of discretion. Id. at 330-31. The practical effect of this rule is to require this court to review the merits of a claim for permissive intervention in order to determine whether the district court's order is appealable. Id. at 331. Thus, should we determine that the request for permissive intervention was denied without an abuse of discretion, we have no jurisdiction and must dismiss the appeal. Id.; New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 473 (5th Cir.1984)
 
 
 [2]
 The Commission was established by Tex.Rev.Civ.Stat. art. 5115.1 (Vernon Supp.1984) to adopt and enforce minimum jail standards for Texas county jails. Section 1 of article 5115.1 sets forth the policy of the Texas Legislature in establishing the Commission:
 It is the policy of the State of Texas that all county jail facilities in the state conform to certain minimum standards of construction, maintenance, and operation. It is the purpose of the legislature by this Act to implement this policy by establishing a commission on jail standards with the authority and responsibility to administer the provision of this Act and other laws relating to standards for county jails.
 
 
 [3]
 Jail standards were initially adopted by the Commission pursuant to section 13(a) of article 5115.1, which required the Commission to promulgate standards on or before January 1, 1977. The current set of jail standards consists of over 600 regulations governing all minimum standards for county jails and their inmates in the State of Texas. These regulations cover a broad range of subjects, from new construction to inmate housing to medical services to discipline and grievances
 
 
 [4]
 The Commission is required to inspect each county jail, at a minimum of once a year, in order to determine whether the jail is in compliance with the Commission's jail standards. Art. 5115.1, Sec. 9(a)(9) & (10); Rule 217.25.011, Texas Minimum Jail Standards. The plaintiffs complain that the Commission never inspects any county jail more than once a year, that these inspections are always announced, and that the inspections are not meaningful or thorough
 
 
 [5]
 The Commission may grant variances to counties pursuant to article 5115.1, Section 11(c), which provides:
 On application of the sheriff or commissioners of a county, if clearly justified by the facts and circumstances, the commission may grant reasonable variances for operation of county jails not in strict compliance with state law, except that no variance may be granted to permit unhealthy, unsanitary, or unsafe conditions.
 Tex.Rev.Civ.Stat. art. 5115.1, Sec. 11(c). Counties are entitled to a hearing before the Commission on their request for a variance. Rule 217.27.001, Texas Minimum Jail Standards. Counties have the right to appeal from an adverse determination by the Commission by filing suit in state district court in Travis County. Tex.Rev.Civ.Stat.Ann. art. 6252-13a, Sec. 19 (Vernon Supp.1984).
 Variances are required, in large part, because of the fact that Texas counties cover a broad spectrum from urban to rural. Jail needs and financial resources of counties will differ over this spectrum. A single set of standards cannot always adequately anticipate all potential factual situations and circumstances that may arise within such a divergent group. Thus, the statute allows the Commission to grant variances to county jails not in strict compliance, if it finds the variance to be reasonable under the circumstances. The plaintiffs argue that the Commission has engaged in a practice of granting variances that have subjected prisoners to unconstitutional and unlawful conditions of confinement.
 
 
 [6]
 The Commission is given the responsibility of enforcing its jail standards. See article 5115.1, Sec. 1. The statute sets out the methods by which the Commission may carry out this responsibility. Once the Commission finds that a county jail is in noncompliance with the standards, it is to grant the county a reasonable time, not to exceed one year, to achieve compliance. Art. 5115.1, Sec. 11(b) & (c). If the county does not comply within the appointed time, the Commission may proceed by one of two routes. First, it may order the jail closed until such time as the jail is brought into compliance with the standards. Art. 5115.1, Sec. 11(d). If the county contests the closure, it is entitled to a hearing before the Commission. Rule 217.27.001, Texas Minimum Jail Standards. A county under a closure order has the right to appeal the order in state district court in Travis County. Art. 5115.1, Sec. 12(a). In such an appeal, the court is confined to the record developed by the Commission, and the only issues before the court are: (1) whether the order of the Commission is based upon substantial evidence; and (2) whether the order is arbitrary, capricious, or illegal. Art. 5115.1, Sec. 12(d). In lieu of closing the jail, the Commission may commence an action for injunctive relief in its own name in a state district court in Travis County to enforce, or enjoin the violation of, its orders, rules or procedures. Art. 5115.1, Sec. 11(f). The state court, in such an action, is directed to issue an injunction ordering compliance if it finds: (1) that the county jail is being operated in violation of the standards; and (2) that the county has been given a reasonable time within which to comply and has failed to do so. The plaintiffs argue that the Commission has failed to carry out its responsibility to enforce its standards and has ignored violations, allowing prisoners to be subjected to unconstitutional and unlawful conditions of confinement
 
 
 [7]
 Intervention of right is required under Fed.R.Civ.P. 24(a)(2)
 [w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 [8]
 The district court found that the Association failed to show inadequacy of representation:
 [T]he Association has not demonstrated that any interest which it might have in this litigation will not be adequately represented by the present Defendants; that their interests are so divergent so as to preclude presentation of legal arguments relevant to this suit which the Association would raise and Defendants would not; or that it would add some necessary element to the proceeding not otherwise covered.
 This determination is subject to the usual scope of our appellate review over questions of law. An erroneous determination will be reversed. United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, 841 (5th Cir.1975).
 
 
 [9]
 The district court held and the plaintiffs argue in this appeal that the counties, and thus the Association, have no legally protectable interest in the subject matter of this lawsuit because this action involves solely the rights and duties of the Commission. The district court concluded:
 [T]his litigation concerns the responsibilities of the Commission in promulgating and enforcing standards pursuant to state and federal law, and not the responsibilities of counties. Admittedly some individual counties may be interested in upholding the legality of specific instances of past enforcement of certain standards and prior variances allowed--instances which Plaintiff may raise as evidence of unlawful action or inaction of Defendants. But this interest is not so significant to this action or shared by all counties so as to justify intervention by the Association.
 The plaintiffs argue that the Association is attempting to assert only (1) rights that belong, not to the counties, but to the Commission, and (2) the economic impact upon the counties that may result from this litigation. The interest required for intervention must belong to the intervenor rather than an existing party to the lawsuit; the presence of harm to a party does not permit him to assert the rights of third parties in order to obtain redress for himself. New Orleans Public Service, Inc. v. United Gas Pipe Line Co., supra, at 452. Similarly, an economic impact alone is not a "legally protectable" interest sufficient to require intervention. Id.
 The Association, however, identifies four methods--rights granted the counties by Texas statutes--by which counties may affect Commission decisions and challenge, if necessary, unfavorable Commission determinations: (1) the right to challenge rules promulgated by the Commission, Tex.Rev.Civ.Stat.Ann. art. 6252-13a, Sec. 12 (Vernon Supp.1984); (2) the right to appeal from an adverse determination by the Commission as to the right to a variance, Tex.Rev.Civ.Stat.Ann. art. 6252-13a, Sec. 19 (Vernon Supp.1984); (3) the right to challenge the Commission in a state court enforcement action brought by the Commission, Tex.Rev.Civ.Stat.Ann. art. 5115.1, Sec. 11(f) (Vernon Supp.1984); and (4) the right to appeal a Commission order closing a county jail facility, Tex.Rev.Civ.Stat.Ann. art. 5115.1, Sec. 12 (Vernon Supp.1984). The Association argues that these rights represent interests in the subject matter of this lawsuit that will be adversely affected if the counties are not afforded representation in this action. We need not decide, however, whether the Association has identified an interest sufficient to require intervention. We merely decide that any interest they might have in this lawsuit is adequately represented by the Commission. We similarly need not decide whether the district court erred in determining that the Association will suffer no impairment and that the Association's motion was untimely.
 
 
 [10]
 The Association points out, and attempts to make much of the fact, that the Commission has not objected to the counties' intervention and that the Texas Attorney General (who represents the Commission in this case) has stated that he does not represent counties in this suit. However, the positions of the present parties to the suit do not control the question of whether intervention will be allowed. 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1909, at 526-27 & n. 78 (1972). Moreover, the Texas Attorney General's assertion that he does not represent counties is clearly a statement that he is not their "legal" representative. However, the many cases cited throughout this opinion as well as the comments to Rule 24(a)(2) itself, make clear that representation is not measured under Rule 24(a)(2) in terms of legal representation, but is rather a practical consideration. Therefore, we accord no weight to these statements by the Texas Attorney General which are based upon a legal theory not determinative in questions under the applicable rule
 
 
 [11]
 The Ninth Circuit has developed a test similar to our circuit's, although worded somewhat differently. In Blake v. Pallan, 554 F.2d 947 (9th Cir.1977), that court determined that three factors should be considered in measuring adequacy of representation: (1) are the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; (2) is that present party capable and willing to make such arguments; and (3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit? As our discussion above makes clear, we would certainly find that the Association has failed to meet this test as well. We note that in Blake v. Pallan, the court, in examining the third element of that test, determined that intervention was not necessary because any benefits which the applicant might have brought to the litigation were already obtained since the applicant, like the Association in this case, had been granted amicus curiae status. 554 F.2d at 955