UNITED STATES of America,
Plaintiff-Appellee,

v.

$41,305.00 IN CURRENCY AND TRAVELER'S CHECKS seized from the house of Pamela and Jack Hoback, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

$41,305.00 IN CURRENCY AND TRAVELER'S CHECKS seized from the house of Pamela and Jack Hoback, Defendants-Appellants.

Cessna Finance Corporation,
Intervenor-Appellant.

Nos. 85–7237, 85–7376.

United States Court of Appeals,
Eleventh Circuit.

Oct. 21, 1986.

Marvin L. Stewart, Jr., Lee R. Benton, Birmingham, Ala., for Cessna Finance.

John E. Medaris, Alabaster, Ala., Ann Robertson, Birmingham, Ala., for Pamela & Jack Hoback.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before RONEY, Chief Judge, CLARK, Circuit Judge, and DOYLE *, Senior District Judge.

CLARK, Circuit Judge:

Appellants-claimants Pamela Thompson Hoback and Cessna Finance Company bring this appeal from the district court's judgment for the United States in this action. The government sought forfeiture of $41,305 in currency and traveler's checks

---

* Honorable James E. Doyle, Senior U.S. District Judge for the Western District of Wisconsin, sitting by designation.

seized from the residence of Pamela Hoback and her husband Jack. Appellant Pamela Hoback filed a claim to the money as her personal property. Subsequently, appellant Cessna Finance filed a motion to intervene and assert its claim to the money under a lien obtained against Jack Hoback. The district court, on recommendation of a magistrate, determined that Pamela Hoback had not met her burden in proving innocent ownership of the money. The money was declared forfeited to the government, and Cessna's motion to intervene was denied as moot. Cessna moved for reconsideration of the court's decision but that motion was denied. Cessna and Pamela Hoback appeal the district court's decisions on various grounds. We reverse with respect to Cessna and affirm with respect to Hoback.

## I. FACTS [1]

This forfeiture proceeding [2] resulted from the arrest of Jack Hoback on October 13, 1983. Hoback was arrested by state and federal officers in West Memphis, Arkansas while attempting to sell one kilo of cocaine. On October 19, the FBI obtained a warrant to search the Hobacks' house in Shelby County, Alabama for "cocaine, and documents and records reflecting financial transactions regarding illegal drugs." The Shelby County residence was owned jointly by Jack Hoback and his wife, appellant Pamela Thompson Hoback. The warrant

was based upon information from confidential and named informants and corroborated in part by DEA surveillance.

FBI and DEA agents executed the warrant immediately but found no drugs at the residence. In the course of the search, however, agents found various documents, including tax returns, and $41,305. The bulk of the money, $37,949 in cash and $1,000 in traveler's checks, was found in a West Memphis bank bag on the sofa of an upstairs sitting room. Approximately $2,156 was found in a "secret room" [3] in the garage and about $200 was found in Jack Hoback's home office. Pamela Hoback was questioned by FBI agents in the course of the search, but she denied keeping large sums of cash at home. When told that $40,000 had been found, she appeared visibly surprised.

Several days later, the FBI obtained a search warrant for Hoback's space at a nearby "mini-warehouse." There, agents found a legal pad containing records of various marijuana transactions. On November 8, 1983, the government filed a complaint for forfeiture of the cash and checks seized in the search of the Hobacks' residence. On December 15, Pamela Hoback filed a claim to the money as her personal property derived from repayment of loans and the recent sale of certain real property owned by her prior to her marriage to Jack Hoback.

---

**1.** The facts discussed in this opinion are taken from those included in the magistrate's orders filed February 18, 1984, and January 18, 1985, both of which were adopted by the district court. We have reviewed the entire transcript and find none of the facts clearly erroneous. In some instances, we have added facts found in the record from our own review for the purpose of explaining the context of the opinion.

**2.** Section 881(a)(6) of Title 21, U.S.C., provides:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

\* \* \* \* \* \*

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of

this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

**3.** The so-called "secret room" was located behind a sliding wall in the basement of the Hoback's three story garage. The room had a floorsafe, special air conditioning and dehumidifying equipment, and a wine rack covering one wall. Entrance to the room was monitored by a security alarm system. Mrs. Hoback contends that the room was never used for drugs, rather it was a wine cellar.

Discovery and evidentiary proceedings were held, and on October 18, 1984, the district court ruled that the government had established probable cause to forfeit the money. The court, adopting the magistrate's report, relied upon the following facts: that Jack Hoback had been convicted in state court on drug charges, that he had pled guilty in federal court to drug charges, and that three kilos of cocaine were found on Hoback's property in May, 1984.[4]

The court then ordered further evidentiary proceedings regarding Pamela Hoback's claim of innocent ownership of the money. Several hearings were held, and on December 21, Cessna Finance filed its motion to intervene in the proceedings. Cessna claimed that the money belonged to Jack rather than Pamela Hoback, and that it had a non-forfeitable interest in the money by virtue of its personal judgment and lien against all of Jack Hoback's property in Alabama.

On March 7, 1985, the district court held that the money should forfeit to the government since Pamela Hoback had not proven innocent ownership. The court again adopted the magistrate's report, which stated that Mrs. Hoback had offered only "possible" innocent sources for the money rather than actual proof. The district court then ordered forfeiture and denied as moot Cessna's motion to intervene. Cessna moved for reconsideration but that motion was denied on May 8. Both Hoback and Cessna then filed timely notices of appeal.

## II. ISSUES ON APPEAL

Pamela Hoback contends that the district court erred on several grounds in ordering forfeiture of the money. First, she argues that federal agents had no authority to seize the money from the house, therefore, the money and its amount were inadmissible evidence. Second, she claims that the finding of probable cause to forfeit the money was based wholly on other inadmissible evidence. Third, she claims that even if probable cause was established, her evidence of innocent, independent sources for the money was sufficient to rebut the government's case and avoid forfeiture.

Cessna Finance for its part contends that the district court erred in declaring its motion for intervention moot. Cessna interprets the lower court's brief statement on mootness as saying that the government's right to forfeiture is superior to that of a judgment lienor. Cessna disputes this assertion and asks that this court recognize its equitable right to the money.

## III. DISCUSSION

### A. *The Government's Authority to Seize the Money*

 In addressing the merits of both appellants' contentions, we find that Mrs. Hoback's first claim of error merits only brief consideration. As Mrs. Hoback notes, the magistrate did find that the federal agents had no "authority" to remove the money from the house. Putting the remark in context, however, reveals that the magistrate only meant that the search warrant on its face did not embrace money as an object of the search. The magistrate's report of September 18, 1984, implies quite correctly that the agents' seizure was nonetheless proper because the money was found in plain view incident to a lawful search. The money and its amount were therefore admissible evidence for forfeiture purposes. Hoback's contentions that the money was "illegally seized" and

---

**4.** On May 19, 1984, approximately seven months after his arrest, Jack Hoback told an Assistant U.S. Attorney that three kilos of cocaine remained buried under the lawn of his Shelby County home. The AUSA so informed federal agents in Alabama and they dug up the cocaine. Subsequent to the district court opinion of October 18, 1984, the magistrate learned that Ho-

back's admission regarding the cocaine was made pursuant to a use immunity agreement with the U.S. Attorney's Offices of Arkansas and South Florida. The magistrate then noted in his report of January 18, 1985 that probable cause could not rest on the evidence of cocaine buried on the property. Instead, the magistrate relied upon the facts set forth *infra* at note 6.

that *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), governs this case are meritless.

██ Furthermore, Mrs. Hoback cannot reasonably claim the agents lacked probable cause to believe the money was evidence of illegal activity. At the time the agents seized the money, they knew Jack Hoback had been arrested in the course of a cocaine transaction, they had confidential information about the large scale of Hoback's dealing, and they recognized that the amount of money found corresponded roughly to the price of one kilo of cocaine. The other possible owner of the cash, Mrs. Hoback, had denied any knowledge of large sums of money in the house. The agents reasonably believed the money was drug-related.

Mrs. Hoback argues nonetheless that two other facts upset the reasonableness of the agents' conclusions. First, no drugs were found during the search, and second, the agents had no information of a recent transaction in which Hoback actually received cash.[5] We find, however, that neither of these facts is inconsistent with the agents' probable cause determination. One may expect a drug dealer to have drugs or money or both on hand; here, agents found the cash equivalent of one kilo of cocaine. It is of little importance that this cash could not be tied to a specific known transaction. The agents seizing the money had information that Hoback had had access to 50 kilos of cocaine for at least two months previous to the search. Hoback could have received the cash by selling some of those kilos in transactions unknown to them. For these reasons, we find that the money was properly seized from the Hobacks'

house and is admissible as evidence in this forfeiture proceeding.

**B.** *Probable Cause for Forfeiture*

██ As a second ground of error, Mrs. Hoback contends that the government failed to establish probable cause to forfeit the money.[6] She argues that the government failed to show any nexus between the money seized and a particular drug deal. Appellant misunderstands the government's burden. The government need not trace the cash to specific transactions, or actually prove by a preponderance of evidence a substantial connection to drug dealing. The government must merely furnish probable cause, i.e., reasonable grounds to believe that a substantial connection exists between the money seized and Hoback's drug dealing. *See United States v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 323 (5th Cir. Unit B 1981). Furthermore, probable cause may be based wholly on circumstantial evidence, *see id.,* and that evidence may include facts learned after the actual seizure of the money. *See United States v. $4,255,000,* 762 F.2d 895, 902 n. 12 (11th Cir.1985).

Mrs. Hoback argues in the alternative that even if the government is not required to prove a connection between the money and specific drug transactions, the government has failed to show even reasonable grounds for belief since all the evidence relied upon below was inadmissible. Specifically, Mrs. Hoback refers to the evidence of her husband's state and federal drug convictions in Arkansas and the three kilos of cocaine found at their Shelby County house in May, 1984. She contends that use of this evidence was precluded by her husband's plea agreement with the U.S. Attorneys in Arkansas and Miami. We need not construe the scope and effect of

---

**5.** The agents knew that before his arrest, Hoback had sold two kilos of cocaine. The first was sold on "consignment" and the second was sold immediately prior to arrest. Therefore, no cash was transferred for either kilo.

**6.** In a forfeiture action, the government bears the initial burden of proving probable cause to forfeit the property at issue. *See United States*

*v. One 1975 Ford F-100 Pickup Truck,* 558 F.2d 755 (5th Cir.1977). Once the government makes this showing, the burden of proof shifts to the claimant to prove by a preponderance of the evidence that the property has an independent innocent source and has not been used illegally. *See id.* If the claimant fails to meet her burden, the property is forfeited.

that plea agreement in these proceedings,[7] however, as the contested evidence was not the basis of the magistrate's final determination of probable cause.

■ In his report of January 18, 1985, the magistrate opined that some of the evidence previously relied upon, including the federal plea and the three kilos of cocaine, was introduced in violation of a use immunity agreement between Jack Hoback and the U.S. Attorney. The magistrate eliminated that evidence from consideration and then cited at least eight other facts and circumstances suggesting that the money seized was drug related.[8] All of this evidence was admissible and appellant has not suggested that it is insufficient to establish probable cause.[9] Indeed, the evidence is more than sufficient, for as we pointed out in *United States v. $364,960.00,* *supra,* conclusive proof that the money was connected to a drug offense is not necessary. The government's task is to present only enough evidence to shift the burden of proof to the claimant. Appellant's argument to the contrary has no substance.

## C. *Claimant's Proof of Innocent Ownership*

Finally, Mrs. Hoback argues that the district court erred in rejecting her claim of innocent ownership of the money. Mrs. Hoback asserted below that the money

found was in fact hers and not her husband's, and that she had gathered it in order to post bond for his release in Arkansas. Appellant offered evidence of three legitimate sources for the money.

Twelve hundred dollars was found in an envelope marked "Kay & Tom loan." Appellant claims that this sum represents partial repayment of a $2,500 loan made to her sister and brother-in-law in October, 1981. Appellant also claims that another $4,750 was obtained by negotiating a check for that amount on October 18, 1983, the day before the search and seizure. Appellant received the check as payment for charter of an airplane on October 17, 1983. The balance of the money seized, some $35,355, is attributed to the sale of some of Mrs. Hoback's real estate in July, 1983.[10] At that time, appellant received a check for $74,527, and she negotiated it immediately.

The district court, on recommendation of the magistrate, found that this evidence showed only a "possible" independent source rather than a direct connection between the innocent transactions and the money seized. Mrs. Hoback contends that proof of a direct connection is both legally unnecessary and factually impossible due to the fungible nature of money. In support, appellant cites *United States v. $131,-602 in U.S. Currency,* 563 F.Supp. 921 (S.D.N.Y.1982), which holds that a claimant

---

7. Indeed, it is not clear that Mrs. Hoback even has standing to assert an objection based upon the plea agreement. That agreement concerns only her husband, and he is not a claimant in this action.

8. The magistrate relied upon the following:
 - (1) Hoback had a reputation among law enforcement authorities as a dealer in narcotics;
 - (2) Hoback had delivered a kilo of cocaine to an individual in Arkansas and had arranged for a subsequent delivery;
 - (3) Hoback stated to this individual that the cocaine which he delivered was part of a larger shipment;
 - (4) The initial delivery of cocaine by Hoback to the individual in Arkansas was on consignment;
 - (5) On the occasion of Hoback's arrest, he was scheduled to contact the individual in

Arkansas and receive payment for the cocaine previously delivered;
 - (6) Instead, Hoback had in his possession a second kilo of cocaine at the time of his arrest;
 - (7) Hoback was subsequently prosecuted in Arkansas and received a life sentence; and
 - (8) Hoback was subsequently indicted in federal court in Arkansas and in Miami for offenses regarding controlled substances.

9. To the extent appellant objects to use of Hoback's Arkansas state conviction and sentence, we note that this particular fact is not essential to the finding of probable cause. The remaining facts set out in note 6 *supra* are sufficient to establish probable cause.

10. The property was acquired by appellant prior to her marriage to Jack Hoback and was owned solely by her until the time of sale.

meets her burden of proof simply by showing that at some time she had received from an innocent source an amount of money equal to that at issue in the forfeiture action. The Southern District of New York adopted this approach because a fungible good such as cash is difficult to trace.

We too recognize that currency is fungible but we do not believe this fact necessitates as low a burden of proof as that imposed by the Southern District of New York. Appellant concedes that once probable cause is established, one claiming the money must show by a preponderance of the evidence an alternate source for the funds. Where the government has presented evidence of an illegal source, the claimant must do more than show the existence of possible legitimate sources of cash.

■ The evidence presented in this case, however, has not demonstrated more than such a possibility. During the course of the search appellant disclaimed any knowledge of large sums of cash in the house. Additionally, Mrs. Hoback has not shown that she customarily kept large sums of cash or that she had a safety deposit box where cash could be kept as in the case of *United States v. $131,602.00, supra.* Appellant claims that the money was gathered to bail out her husband, but in fact almost half was withdrawn from several banks before her husband was arrested. The largest claimed source of the cash was the $74,527 which she received in July, as previously recounted. Mrs. Hoback has not offered her bank records in connection with this transaction. The $74,527 was received in the form of a check and evidence was not offered as to the handling of that check, that is whether it was negotiated and left on deposit or cash paid immediately in exchange for it. Given the legal requirement that she had to come forth with the evidence, Mrs. Hoback had of necessity to establish her financial transactions since the receipt of that check. Mrs. Hoback has presented only the possi-

bility of an innocent source, and as the Sixth Circuit has observed, such a possibility cannot vitiate the government's showing of a strong probability that the source of the money is in fact illegal activity. *See United States v. $83,320 in U.S. Currency,* 682 F.2d 573 (6th Cir.1982). More importantly, such a possibility does not constitute a preponderance of evidence defeating forfeiture. The judgment of the district court with respect to Mrs. Hoback's claim is affirmed.

### D. *Cessna's Right to Intervene*

■ Having determined that the present claimant has no right to prevent forfeiture, we turn to the appeal of potential claimant-intervenor Cessna Financial. Cessna contends that the district court erred in dismissing as moot its petition to intervene. Cessna claims intervention by right under Fed.R.Civ.P. 24(a), which imposes four prerequisites:

> (1) the applicant must have an interest in the property at issue;
>
> (2) the case must pose the risk that disposition without intervention would, as a practical matter, impair or impede applicant's ability to protect its interest,
>
> (3) the applicant's interest must be inadequately represented by the other parties; and
>
> (4) the motion for intervention must be timely.

*See Howse v. S/V "Canada Goose I",* 641 F.2d 317, 320 (5th Cir. Unit B 1981). The requirement most difficult to establish in this case is the first, the sufficiency of Cessna's interest in the money at issue. Cessna must have "a direct, substantial, legally protectible interest" in order to intervene.[11] *See id.*

Cessna claims such an interest on two theories. First, Cessna argues that it has a perfected security interest in the money by virtue of a 1974 security agreement between Cessna and Southland Aviation, a corporation partly owned by Jack Hoback.

**11.** Contrary to the government's assertions, standing to intervene is not synonymous with standing to contest forfeiture. The latter is an

element of a claimant's case to prevent forfeiture and it need not be proven on a motion to intervene.

The agreement granted Cessna a secured interest in a particular airplane and its proceeds, but the plane was sold out of trust later in 1974. Cessna contends that the money at issue constitutes proceeds from that sale which have been retained by Jack Hoback or fraudulently conveyed to his wife. Second, Cessna argues that its interest in this action rests on its status as a judgment lienholder. In 1975, Cessna obtained a personal judgment in Kansas against Hoback for the value of the airplane sold out of trust. The judgment was domesticated and recorded in Shelby County, Alabama on March 26, 1984. Cessna contends that this judgment gives it a lien against all of Hoback's property in Shelby County, including the money at issue.[12]

We find that Cessna has a sufficient interest to intervene. To the extent Cessna can prove that it has a valid perfected security interest dating from 1974, it may have a legally protectible interest in the *res* of this action. *See Howse, supra* at 321. We doubt that Cessna can premise intervention on its judgment lien, however, as that may have arisen after Hoback's illegal use of the money. Illegal use immediately vests title to the property in the sovereign, and cuts off the rights of third parties to obtain legally protectible interests in the property. *See United States v. One Piece of Real Estate*, 571 F.Supp. 723, 725 (W.D.Tex.1983) (citing *United States v. One 1967 Chris Craft 27 Foot Fiberglass Boat*, 423 F.2d 1293 (5th Cir.1970)).

The remaining prerequisites to intervention are also present in this case. As a practical matter, Cessna's ability to protect its interest would clearly be impeded or impaired if intervention were denied. The only action in which Cessna can contest the government's seizure and assert its superior right to the money is this forfeiture proceeding. No administrative remedies are available. *See United States v. One Piece of Real Estate, supra* at 724–25.[13] Furthermore, neither the government nor Mrs. Hoback can adequately represent Cessna's interest, and Cessna's motion to intervene was not untimely. *See Stallworth v. Monsanto*, 558 F.2d 257 (5th Cir. 1977). Although there was some delay by Cessna in domesticating its judgment and filing its motion to intervene, neither of the original parties has asserted any prejudice from this delay. To deny intervention on the basis of the delay would, however, significantly prejudice Cessna. Therefore, we find that Cessna's motion to intervene was timely and sufficient in all other respects under Fed.R.Civ.P. 24(a). The district court erred in denying the motion on grounds of mootness. We emphasize that the district court's error relates only to its holding that Cessna had no right to intervene. Our reversal of the district court on this issue intimates no view respecting the validity of Cessna's claim based upon its 1974 security instrument or its 1984 judgment.

In summary then, and for the reasons set forth above, we affirm the district court's denial of appellant Pamela Hoback's claim and we reverse the district court's denial of Cessna Financial's motion to intervene. Pursuant to that reversal, the district court shall vacate its order of forfeiture in favor of appellee United States and hold an evidentiary hearing for the purpose of determining whether Cessna can prove its claim to the fund.

AFFIRMED in part, REVERSED in part and VACATED.

---

**12.** Under Alabama law, a judgment lien may be created by filing or registering a certificate of judgment in probate court. Levy of property is unnecessary. *See Johnson v. Haleyville Mobile Home Supply*, 477 So.2d 328 (Ala.1985) (construing Ala.Code § 6–9–211).

**13.** Prior to 1978, a claimant of funds seized or forfeited could petition the Attorney General for remission or mitigation of forfeiture. Such relief constituted an act of executive clemency and was not subject to judicial review. *See One Piece of Real Estate, supra.* A 1978 amendment to the forfeiture statute, 21 U.S.C. § 881(a)(6), now provides that innocent owners or lienholders of seized funds may participate in judicial forfeiture proceedings. *See id.* In light of this amendment, the Attorney General now rejects petitions for remission under § 881(a)(6) as filed improperly. *See id.* Thus, Cessna's only forum for relief is the present action.