The UNITED STATES of America, Plaintiff,

v.

TEXAS EDUCATION AGENCY (LUBBOCK INDEPENDENT SCHOOL DISTRICT), et al., Defendants.

Civ. A. No. CA–5–806.

United States District Court,
N.D. Texas,
Lubbock Division.

June 11, 1991.

---

Nat Douglas, Gilah G. Goldsmith, R.W. Rodriques, Frank Allen, Dept. of Justice, Frank R. Marshall, Wm. Bradford Reynolds, Joe Rich, Gaye L. Hume, Dori Bernstein, Washington, D.C., Dan Morales, Atty. Gen. of Tex., Austin, Tex., Brad Crawford, Cecil Kuhne, Lubbock, Tex., for plaintiff.

Kevin Glasheen, Mary Alice McLarty, Lubbock, Tex., for movants.

## ORDER

WOODWARD, Senior District Judge.

The above entitled action concerning segregation in the public school system of the Lubbock Independent School District (LISD) was first filed by the Department of Justice against the LISD and its trustees in August of 1970. When the LISD is referred to herein as defendant, such term will include all of the defendants who have been named as the present trustees as well as their predecessors in office, all in their official capacity.

Before the Court at this time is a motion by LISD to modify the attendance and boundary zones of various schools in the district and to consider changes in the magnet program; a motion of certain individuals to intervene in opposition to LISD's proposed modification and a motion by defendants to dismiss the proposed "Claim for Which Intervention is Sought."

Those seeking to intervene have varying interests which allow them standing to file their motion to intervene, such interest being set forth in detail in the Magistrate Judge's "Findings, Conclusions and Recommendations."

The motion by the Proposed Intervenors was referred to a Magistrate Judge with authority to conduct a hearing and file findings, conclusions and recommendations with this Court on the motion to intervene. The Magistrate Judge has filed this report and the parties have filed objections and arguments and briefs in support of and in

opposition to the requested intervention. The record of the hearing before the Magistrate Judge was transcribed into three volumes consisting of 449 pages.

This Court has read and carefully considered the transcript of the hearing as well as all of the submissions of the parties. Based upon the Magistrate Judge's findings, he concluded that the motion to intervene should be denied and so recommended to this Court.

After independently considering the pleadings of the parties, the transcript of the hearing before the Magistrate Judge, and the briefs and argument of all counsel[1], the Court is of the opinion that this Order should be entered *adopting and finding as correct* each of the findings and conclusions of the Magistrate Judge, and they *are here adopted as the findings and conclusions of this Court.*

Having considered the objections to the findings and conclusions of the Magistrate Judge, the Court is of the opinion and finds that such objections are without merit and not supported by the record in this case. ACCORDINGLY, the objections by the Proposed Intervenors to the Magistrate Judge's rulings are OVERRULED AND DENIED.

As indicated, this case was originally filed over 20 years ago and the United States of America, through the Department of Justice, has remained the Plaintiff in the case and the LISD and the various individual trustees and their successors, in their official capacity, have remained as the Defendants. In addition, the Texas Education Agency was originally named as one of the parties and still remains in the case and has participated in the proceedings concerning the proposed intervention.

When this suit was originally filed, it was alleged that the LISD was operating a dual school system which discriminated against minority students. The Brief in Support of the Motion to Intervene sets forth in fairly accurate detail the history of this litigation which has lead to the point where we are today.[2]

By Order of May 2, 1988, based upon the Consent Decrees entered in this case and an Agreed Record, the operation of LISD was found and declared to be in accordance with the laws and constitutional requirements and was declared to no longer be a dual system, with the Court retaining jurisdiction for a period of not less than three years. At the conclusion of this three year period, opportunity would be given to show cause why the case should not be dismissed and the injunctions dissolved.

The LISD has now designated the site for the new junior high school to be built pursuant to the Consent Decree of March 2, 1988; however, instead of filing its proposed modification plan as it affects only the junior high schools brought about by the building of the new junior high school, the LISD now seeks to make numerous modifications to the existing desegregation plan. It is this proposed modification which prompted the Proposed Intervenors to file their Motion to Intervene, along with their proposed complaint in intervention, designated as their "Claim for Which Intervention is Sought."[3]

The Proposed Intervenors seek to intervene, claiming basically that (1) the LISD has violated prior Orders by failing to implement prior desegregation plans; (2) the proposed plan is "inadequate, discriminatory and resegregative; and (3) the injunctions in effect should not be dissolved.

The Proposed Intervenors seek intervention pursuant to both Fed.R.Civ.P. 24(a) (intervention as a matter of right) and 24(b) (permissive intervention).

The Magistrate Judge's "Findings, Conclusions and Recommendations," which are adopted herein by reference and made find-

---

1. Amicus Curiae Briefs have been filed by (1) the NAACP of Lubbock; (2) the League of Women Voters of Lubbock; (3) the League of United Latin American Citizens Council # 4449 and the American GI Forum of Lubbock; and (4) Ken L. Hargesheimer and other specific parties named in such Brief.

2. See Proposed Intervenor's Brief at pages 1–7.

3. Pursuant to Fed.R.Civ.P. 24(c).

ings and conclusions of this Court, set forth the requirements for intervention of right[4] and adequately discusses the first three requirements. Because this Court finds that the Proposed Intervenors have failed to overcome the fourth test for intervention of right, i.e. inadequate representation by the Government of the Proposed Intervenors' rights and interests, it is not necessary to discuss the other three requirements, which have been fully discussed by the Magistrate Judge.

The Fifth Circuit in *Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir.1984), found that:

"If a would-be intervenor fails to meet any one of these requirements then it cannot intervene as a matter or right".

■ The test in the Fifth Circuit is that "when the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Bush*, 740 F.2d at 355. *See also Kneeland v. National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1287 (5th Cir.1987) cert. denied 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987). Therefore, the Proposed Intervenors must show an adversity of interest on the part of the Government, collusion between the Government and the LISD, or nonfeasance on the part of the Government. This the proposed intervenors have failed to do.

Fifth Circuit precedent establishes that "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application ... [and] intervention of right must be measured by a practical rather than technical yardstick." *U.S. v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 413 (5th Cir.1991) citing *United States v. Allegheny–Ludlum Indus., Inc.*, 517 F.2d 826,

841 (5th Cir.1975), cert. denied. 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

Insofar as adversity of interest, the Proposed Intervenors have admitted that their ultimate goal is a desegregated school system. That also is the ultimate goal of the Government.

As found by the Magistrate Judge, both the Proposed Intervenors and the Government have the same ultimate objective—desegregation. The Proposed Intervenors, however, complain that because the Government is not here in Lubbock, Texas, on a day-to-day basis, it does not possess local knowledge and concerns for the issues. However, when questioned, most of the Proposed Intervenors acknowledged that they had never attempted to directly communicate their position to the Government. In fact, the Proposed Intervenors did not really seem to understand the proposed modification because most responses were to the effect that either their attorneys had that knowledge or that experts had been hired by their attorneys to analyze the proposed modification.

A subjective comparison, however, of the conviction of defendants and intervenors is not the test for determining adequacy of representation. Adequacy can be presumed when the party on whose behalf the applicant seeks intervention is a governmental body or officer charged by law with representing the interests of the proposed intervenor. *Keith v. Daley*, 764 F.2d 1265, 1270 (7th Cir.1985) cert. denied 474 U.S. 980 [106 S.Ct. 383, 88 L.Ed.2d 336] (1985).

The record shows that the Government has objected to the proposed modification, in certain respects, and the Court finds that no adversity of interest has been shown.

In an attempt to show collusion between the Government and the LISD, Proposed Intervenors focused on a recent meeting where members of the LISD administration

---

**4.** (1) The Motion for Intervention must be timely;

(2) The Movants must have an interest relating to the transaction which is the subject of the ongoing action;

(3) The Movants must be so situated the disposition of the action may as a practical mat-

ter impair or impede their ability to protect their interest in the litigation; and

(4) The Movants' interest must be inadequately represented by the existing parties to the ongoing litigation.

Fed.R.Civ.P. 24(a).

and Board of Trustees, along with LISD attorneys, traveled to Washington to meet with Government attorneys. The Court finds that this does not show collusion, but indicates a willingness on the part of the LISD and the Government to do their job. In fact, the November 2, 1987, Consent Decree requires the LISD to submit proposed modifications to the Government for approval; and then, in the event agreement cannot be reached, the parties are to then submit the dispute to the Court for resolution. That is not collusion between the parties, but an attempt to follow Court Orders, as well as ordinary negotiations in an ongoing lawsuit.

Failing in showing adversity of interest or collusion, the Proposed Intervenors must then show nonfeasance and that the Government has failed in its duty of adequate representation. As noted earlier, this case was initially filed by the Government in August, 1970. Over the years, numerous Orders have been entered by this Court, some over the strenuous opposition of the Government. Some Orders have been appealed. The Government has had numerous attorneys working on this case over the past 21 years. The record in this case is replete with adequate and full representation by the Government on the issues before this Court.

The Proposed Intervenors attempt to show that because other parties were allowed to intervene in prior proceedings and as a result thereof, a new junior high school is to be built, that this shows inadequate representation on the part of the Government. As a part of this argument, they argue that the Government's attorney failed to attend the hearing on the site location for the new junior high school. The record reflects that Franz Marshall, the Government's attorney, notified the Court in writing of the Government's position and also filed a post hearing brief. It is also noted that even one of the attorneys for the then intervenors did not appear at the hearing. The prior intervenors were adequately represented at the location hearing by their retained attorneys; therefore, it was not incumbent upon the Government attorney to represent the then intervenors' interest at that hearing. In fact, the record indicates that the Government has urged the same building location as sought by the minority interests.

The Proposed Intervenors have wholly failed in showing inadequate representation on the part of the Government. While the presumption of adequate representation may be rebutted on a "relatively minimal showing," the Proposed Intervenors "must 'produce something more than speculation as to the purported inadequacy.' " *League of United Latin Amer. Citizens v. Clements*, 884 F.2d 185, 189 (5th Cir.1989), citing *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979). The Proposed Intervenors have not overcome the presumption of adequate representation and in addition thereto, the record and testimony before this Court establishes by a preponderance of the evidence that the Government has in the past adequately represented the interest of the Proposed Intervenors and will continue to do so in the future. Therefore, the Court finds that Proposed Intervenors are *not* entitled to intervene as a matter of right.

Once intervention of right is denied, the Court next looks to permissive intervention.

A court may grant permissive intervention under Rule 24(b) only if three conditions are met: (1) the movant must show an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common ...

The existence of a common question of law or fact does not automatically entitle an applicant to intervene. Rather, rule 24(b) necessarily vests "discretion in the district court to determine the fairest and most efficient method of handling a case ...." [Citations omitted.]

In exercising its discretion to grant or deny permissive intervention, a court must consider whether the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b).

In addition to the interests of the original parties, a court in deciding whether to permit intervention should evaluate whether the movant's "interests are adequately represented by existing parties." [Citations omitted]. . . .

Finally, judicial economy is a relevant consideration in deciding a motion for permissive intervention. [Citations omitted.]

*Venegas v. Skaggs,* 867 F.2d 527, 529–531 (9th Cir.1989) aff'd on other grounds —— U.S. ——, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).

The Fifth Circuit has found that permissive intervention is discretionary with the District Court. *See Kneeland,* 806 F.2d at 1289; *U.S. v. Texas Eastern Transmission Corp.,* 923 F.2d at 413.

In addition to the three factors considered by the Magistrate Judge, i.e. (1) timeliness, (2) common facts or law, and (3) prejudice to the parties,[5] an additional factor to be considered in determining permissive intervention is "whether the intervenors' interests are adequately represented by other parties." *Kneeland,* 806 F.2d at 1289; *League of United Latin Amer. Citizens,* 884 F.2d at 189. As discussed hereinabove, the Court finds that the Proposed Intervenors have not overcome the presumption of adequate representation on the part of the Government, and therefore, denies permissive intervention. The Court also finds that prejudice to the existing parties would result if permissive intervention is allowed. Such prejudice would include delay, unnecessary costs, and reduced control over the lawsuit. *See Tasby v. Wright,* 109 F.R.D. 296 (N.D.Tex.1985).

The Court therefore finds that the Proposed Intervenors' Motion to Intervene, with the accompanying proposed pleading setting forth the claim for which intervention is sought, both as a matter of right

and with permission, should be and the same is hereby DENIED.

The Court does find that the Proposed Intervenors should be granted amicus curiae status in the case. *See Bush,* 740 F.2d at 359. Accordingly, the Proposed Intervenors may give such input directly to the Government as they desire, and shall further be permitted to file their Amicus Curiae Brief stating their position regarding the proposed modification of the desegregation plan. Such Brief shall be limited to 25 pages and shall be filed on or before *June 20, 1991.*

In addition to filing its opposition to the proposed intervention, the LISD has also filed a "Motion to Dismiss Proposed Intervention, Alternatively Motion to Disqualify Counsel, and Motion to Limit Scope of Hearing on Proposed Intervention." A Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) goes to the merits of the claim and should not be granted unless the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). As this Court has denied intervention, the Motion of LISD to Dismiss is moot. The Court further finds that the Motion to Disqualify is without merit and is therefore denied. The Magistrate Judge limited the scope of the evidentiary hearing at the time of the hearing and that limitation is affirmed by this Court.

IT IS SO ORDERED.

### FINDINGS, CONCLUSIONS AND RECOMMENDATIONS

J.Q. WARNICK, Jr., United States Magistrate Judge.

Dr. Damon Hill, his wife Mrs. Stephanie Hill, Ms. Cathy Anderson, Ms. Sandra Salazar and Dr. Sam Spikes[1], filed a Motion Seeking to Intervene as Party Plaintiffs. The Motion was filed seeking Intervention

---

**5.** *Bush v. Viterna,* 740 F.2d at 359; Fed.R.Civ.P. 24(b).

**1.** These parties will hereinafter be referred to as Movants. The participants in the Hearing on the Motion to Intervene had considerable difficulty in deciding on the denomination for these

five (5) persons. However, they made a Motion, therefore Movants. In some instances it will be necessary to refer to an individual Movant. When this occurs the individual will be referred to by his or her last name.

of Right, Rule 24(a), Federal Rules of Civil Procedure (FRCP), and Permissive Intervention, Rule 24(b), FRCP. The Motion to Intervene was referred to the undersigned Magistrate Judge by the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(A) for Findings, Conclusions and Recommendation.

It is the law of this Circuit on a Motion to Intervene a District Court disposition of a proposed intervention must be supported by findings based upon an adequate record, *United States v. State of Louisiana*, 543 F.2d 1125, 1128 (5th Cir.1976), *Adams v. Baldwin County Board of Education*, 628 F.2d 895, 897 (5th Cir.1980), and *United States v. Crucial*, 722 F.2d 1182, 1190 (5th Cir.1983).

This is a lawsuit originally filed in 1970 by the United States of America (hereinafter Government) acting through the Department of Justice. A suit was filed against the Lubbock Independent School District (hereinafter School District). It was alleged there was being operated a dual school system which discriminated against minority students. The case has a long history of Hearings, Orders, Appeals, etc. In September, 1987 Linda DeLeon, who will be a witness in this case at bar and is presently serving as an elected School Trustee for the School District, joined with three (3) others. They were permitted to intervene. On March 2, 1988 a Consent Decree was entered. No objections were filed to this Consent Decree. Therefore, on May 3, 1988 an Order was entered by this Court declaring the School District had achieved unitary status. The Court, however, Ordered it would retain its jurisdiction for a three (3) year period. At the end of this time period the School District could seek dismissal with prejudice, request the injunctions be dissolved, the Judgment discharged and jurisdiction terminated. The opportunity would be given to the Government to show cause why such an Order should not be entered. However, at this point the School District has not sought entry of an Order dismissing with prejudice, dissolving injunctions, discharging Judgment and terminating jurisdiction. As a part of the Consent Decree,

which was approved by the Court in May, 1988, the then Intervenors acquired an agreement. This agreement was that within a certain defined geographic area there would be constructed a Junior High School when there were the requisite students residing within the geographic area. On July 10, 1990 this Court Ordered the construction of such Junior High School. The School District/Intervenor Consent Decree with the Court's approval permitted the School District to select the geographic situs of the school. However, the Consent Decree required it be constructed as near as possible to the geographic center of the location of the students. On September 26, 1990 this Court sua sponte dismissed the then intervenors.

On February 1, 1991 the School District filed notice of its site selection for the construction of the new Junior High School to be known as Cavazos Junior High School. In addition, the School District filed with the Court a proposed reorganization plan with regard to the entire School District. On February 28, 1991 the Government was granted an extension of time until March 21, 1991 in which to file its response to the reorganization plan. On March 13, 1991 the Movants filed their Motion to Intervene.

The Movants seek consent to intervene under Rule 24(a), FRCP, to an Intervention of Right. Intervention of Right has a four part test. The Movants are required to meet each of the four parts before they will be permitted to intervene. Under Rule 24(a) the well settled four part test to intervene is,

(1) The Motion for Intervention must be timely;

(2) The Movants must have an interest relating to the transaction which is the subject of the ongoing action;

(3) The Movants must be so situated the disposition of the action may as a practical matter impair or impede their ability to protect their interest in the litigation; *and*

(4) The Movants interest must be *inade-quately* represented by the existing parties to the ongoing litigation.

*Bush v. Viterna,* 740 F.2d 350, 354 (5th Cir.1984), *Jones v. Caddo Parish School Board,* 735 F.2d 923 (5th Cir.1984) and *Stallworth v. Monsanto Company,* 558 F.2d 257 (5th Cir.1977).

The test for Permissive Joinder is a three part test. To permit Permissive Joinder under Rule 24(b), FRCP, the Movants must satisfy the Court,

 (1) The Motion for Intervention is timely;

 (2) The Movants claim and the ongoing litigation must have common questions of law and/or fact; and,

 (3) The Movants intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

*Bush v. Viterna,* 740 F.2d at Pg. 359.

## SUBPOENA

Prior to the Hearing the Movants issued a subpoena for Mr. Ronald Gooch, who is an Assistant Superintendent with the School District. The subpoena was one requiring he bring with him certain documents concerning the financial records of the School District. In Hearings involving the previous Intervenors and prior to the Order of May, 1988 other lawyers were representing the School District. The subpoena requested Mr. Gooch to bring with him the financial records, including any Contract, the Time Sheets submitted, and the fees paid to a lawyer representing the School District prior to May 3, 1988. The School District filed a Motion to Quash the Subpoena. A brief In–Court discussion was held before the beginning of the Hearing on the Motion to Intervene with regard to this subpoena. The records sought and the proffer as made by the Movants in Court indicated they wanted to offer evidence about transactions which had transpired in the School District concerning this litigation prior to May 3, 1988. The School District's Motion to Quash the Subpoena was granted. A ruling was made by the Court, sua sponte, it would not hear any evidence concerning any matter which oc-curred prior to May 3, 1988. By the Order of May 3, 1988 this Court held the School District had complied with all Orders and Consent Decrees and was entitled to unitary status subject to the further Orders of the Court. Thus, there could be no relevance in rehashing issues and questions previously decided.

## DISCOVERY

It was the position of the School District and the Government these Movants were not entitled to utilize any of the Discovery procedures, Rules 26–34, FRCP, since they were not a "party" as mentioned in Rule 26, et seq. Prior to the Hearing the Movants had served certain Interrogatories on the Government. The Government had agreed to an advance date for either objecting to the Interrogatories, filing a Motion with regard to them, answering the Interrogatories, etc. The School District objected and filed a Motion seeking to deny to the Movants any of the discovery techniques available in the Federal Rules of Civil Procedure. The Government answered the Interrogatories making objections to certain inquiries. These Interrogatories were offered into evidence. The objections of the School District with regard to the use of the discovery devices in the Federal Rules of Civil Procedure by these Movants was overruled.

It would be totally inconsistent with the intent of the Federal Rules of Civil Procedure if these Movants were completely shut off from discovery. They are granted by the Rules of Civil Procedure the opportunity to seek to intervene. It would be ludicrous if they were denied by the same Rules all of the discovery techniques to be able to prove up their evidentiary position.

Two similar examples immediately come to mind. Under Rule 23, FRCP, when a Class Action is begun the discovery is strictly limited to those inquiries which are essential to prove the Class Action is maintable. Thus, the discovery is permitted but limited. The same technique is utilized in Civil Rights proceedings under 42 U.S.C. § 1983. Under the Civil Rights Act certain public officials may plead some form of

immunity. The immunity is not a defense, it is an entitlement. The Courts have consistently held such immunity is effectively lost if the case goes to trial and *through the discovery process* before the immunity issue is resolved, *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and *Helton v. Clements*, 787 F.2d 1016 (5th Cir.1986). However, the Fifth Circuit has crafted a Rule which in spite of the apparent prohibition against discovery permits the party who is seeking to resist a claim of immunity to have some form of discovery. The Courts limit the discovery by a narrowly tailored order to permit only uncovering facts essential to ruling on the immunity claim, *Lion Boulos v. Wilson*, 834 F.2d 504, 507–508 (5th Cir.1987).

Since the Federal pleading and discovery system is based solely upon notice pleading and then to flesh out the bare bones of the notice by means of discovery it would be inconsistent with the intent and purpose of those rules to deny to a Movant seeking to intervene the opportunity to utilize all of the discovery techniques. There would be available to those seeking to resist discovery an Order of the Court to confine the discovery only to uncovering facts essential to ruling on the Motion to Intervene. Therefore, the objections of the Government and School District solely with regard to service of the Interrogatories and the filing of those answers as Exhibits in this case is overruled.

## TIMELINESS

The timeliness factor is applicable to both Intervention of Right, Rule 24(a), FRCP, and Permissive Intervention, Rule 24(b), FRCP, *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973). As noted the Court entered an Order finding unitary status in May, 1988. Following some Hearings with regard to the construction of the Cavazos Junior High, an Order was entered and the School District later filed its designation and choice of the geographic building site on February 1, 1991. Contemporaneous with this filing the School District filed its proposed reorganization plan for the entire School District. Movants filed their Motion to Intervene on March 13, 1991 and seek to resist the proposed changes in the February reorganization plan.

The School District and the Government take the position this litigation having gone on since 1970, these Movants have not made a timely entrance into the lawsuit. The previous Orders of this Court obviously belie this position. The previous Intervenors, DeLeon, Rojas, Gloria and Richardson, were permitted to intervene on August 12, 1987, and September 7, 1987, which was some seventeen (17) years after the original filing of this lawsuit. Therefore, the law of the case dictates intervention as late as 1987 with regard to current proposals is not inappropriate. However, when it is noted the evidence for purposes of the Motion to Intervene will be limited to going no further back than May, 1988, then the timeliness of the intervention is considerably enhanced. However, it is patently obvious when a Motion to Intervene is filed within six (6) weeks after the reorganization plan, it is timely. This new reorganization plan has just begun to be considered by the Government, and these Movants are not untimely in seeking intervention. Timeliness is a determination within the Court's discretion, *NAACP v. New York*, 413 U.S. at Pg. 366, 93 S.Ct. at Pg. 2603.

## INTEREST IN THE TRANSACTION (STANDING)

Each of the five (5) Movants testified. Ms. Anderson is a Black American and maintains her residence within the boundaries of the School District. She has two (2) school age children. Russell, her son who is 19, presently attends Dunbar High School. Her daughter, Rolanda, attends Wheatley Elementary School. Ms. Anderson testified she wanted her daughter to be able to attend a magnet program at Slaton Junior High School then to attend Dunbar High School. The evidence revealed most likely the Slaton Magnet Program will not be affected. However, the reorganization plan proposes converting Dunbar–Struggs High School into a Junior High School.

Dr. Hill and his wife Mrs. Hill, both testified. Dr. Hill is a Black American and a medical doctor. He is a graduate of Dunbar High School in Lubbock. Dr. Hill and his wife have three (3) children. Their oldest is 7, they have a child 6 and another 3½ years old. The oldest child began school at Iles Elementary, which is in the neighborhood of Dunbar–Struggs High School. She had a reading problem and as a result of its not being attended to in the public school she was removed from public school and placed in a private school. The child had a slight problem with dyslexia. Their middle child is also attending the private school because it is a matter of convenience. Dr. Hill testified he wanted his children to attend Dunbar High School and the O.L. Slaton Magnet School. His wife's testimony was along the same lines. Mrs. Hill also is a Black American. Mrs. Hill has a Bachelor of Science Degree from Texas Women's University and an Associate Dental Hygiene Degree from The University of Texas. She is presently employed as Office Manager for her physician husband, Dr. Damon Hill. Her testimony tracked the testimony of her husband. She wanted her children to be able to attend the Magnet Program at Slaton Junior High, and then to attend Dunbar Senior High School.

Mrs. Salazar is also a product of the Lubbock Independent School District having attended Elementary, Junior High and Lubbock Senior High School where she graduated. Mrs. Salazar is retired from the U.S. Military Service. Mrs. Salazar has two (2) children. Her son, Joe, is 18 years of age and her son, Matthew, is 14. Joe is presently attending Coronado Senior High School and the younger son is attending 7th grade at a private school. Mrs. Salazar expressed her concerns the reorganization plans would not permit her children to attend an *intergrated* neighborhood school and she wanted them to attend what was previously known as Matthews Junior High School. Under a previous Order of this Court Matthews Junior High School was converted to Matthews Learning Center and only 7th graders attend there. Those children living in the neighborhood attend the school and 7th graders from two (2) other Junior Highs are bused there for attendance. The 8th and 9th graders who would have ordinarily attended Matthews Junior High are bused to the other Junior High Schools. Mrs. Salazar is an Hispanic American.

Dr. Sam Spikes is also a medical physician. Dr. Spikes is an Anglo American. He has two (2) daughters. Dr. Spikes, like Dr. Hill, Mrs. Anderson and Mrs. Salazar, is also a product of the Lubbock Independent School District. He lives in the neighborhood near the former site of an older Junior High known as Thompson Junior High School. Under the Orders of this Court this Junior High School was demolished as being unsafe, although the vacant property still remains available for construction. Dr. Spikes lives within just a few blocks of the old Thompson Junior High School site. Dr. Spikes has two (2) daughters ages 8 and 11. At the present time Dr. Spikes' two (2) daughters are attending an Episcopalian Private School.

The issue of the standing of any and all of these litigants is hotly contested by the School District and the Government. It must be noted the two (2) Anderson children do live within the boundaries of the School District and presently attend those schools. The two (2) Salazar children live within the boundaries, however, one (1) of them attends private school while the other attends the School District. Neither of the Hill children attend the School District, although they live within the School District boundaries. Anderson, Salazar and the Hills are members of minority ethnic groups. The Spikes children live within the boundaries, although they have never attended the public schools and are presently enrolled in private schools.

At least with regard to the testimony of Dr. Spikes the cross examination sought to impeach his stated interest in the reorganization plan and its effect on his children. The cross examination sought to reveal Dr. Spikes had appeared at many public hearings and his primary interest was in the value of his residential property, and his hoped for construction of a new Junior

High School near his property. Even conceding a part of his motivation had to do with his residential property and its increase in value, it would not change his standing to represent the interest he has as a parent and his children's welfare in attending a desegregated and intergrated unitary school system. Dr. Hill was sought to be impeached on the basis his interest with regard to the closing of Dunbar High School was an emotional attachment he had to the school he had attended. While the Court would concede most individuals maintain some sort of an emotional and spiritual tie to the high school where they graduated, even coloring his testimony in this instance with such a paintbrush still does not diminish nor impeach his interest in the welfare of his children.

 This part of the test, like those which will be discussed hereinafter, have no bright line rules. To have standing the Movants must have a personal stake in the outcome of a suit by demonstrating both a distinct and palpable injury, *PBA Local No. 38 v. Woodbridge Police Department,* 134 F.R.D. 96, 99 (D.N.J.1991). The United States Supreme Court has said a party seeking to intervene must have a "significantly protectable interest", *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). In *Evans v. Buchanan,* 130 F.R.D. 306, 310–11 (D.Del.1990) the Court said "parents" who seek to intervene in a desegregation litigation have an interest in eliminating segregation in their children's school sufficient to satisfy the interest requirement. *Evans v. Buchanan* for this position cited the Fifth Circuit case of *Pate v. Dade County School Board,* 588 F.2d 501, 503 (5th Cir. 1979), *cert. den., sub nom. Beckford v. Dade County School Board,* 444 U.S. 835, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979)). In *Johnson v. San Francisco Unified School District,* 500 F.2d 349, 353 (9th Cir.1974) the Ninth Circuit said for purposes of intervention of right all students and parents "whatever their race" have an interest in the educational system and its operation. This Court also cited for this proposition *Moore v. Tangipahoa Parish School Board,* 298 F.Supp. 288, 293 (E.D.La.1969).

See also with regard to the standing regardless of race, *Liddell v. Caldwell,* 546 F.2d 768, 770 (8th Cir.1976), *reh. and reh. en banc den.* (1977), *cert. den. on other grounds* 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1976). As noted in *Moore v. Tangipahoa Parish School, supra,* at Pg. 293 the District Court held race was an immaterial question as regarded the parents and the students. In *Hines v. Rapides Parish School Board,* 479 F.2d 762 (5th Cir.1973) *reh. den.* (1973) there were both Black and White parents and children. There were also children attending private schools as well as attending the public schools. Those parties were found to have standing. In the Fifth Circuit in *Tasby v. Estes,* 572 F.2d 1010, 1012 fn. 2 (5th Cir. 1978) *reh. and reh. en banc den.* (1978) where the National Association for the Advancement of Colored People sought to intervene in representing all its members and the children of its members, the Court said resistance to the intervention of this group was groundless. Therefore, the simple fact one is a parent with children affected by the proposed plan is sufficient to create standing. The question of race or whether the children attend private schools or not, are both questions immaterial to consideration of standing. Therefore, all five (5) of these Movants have standing since they have an interest relating to the integration and desegregation of the School District.

### PROTECTION OF MOVANTS INTEREST

The discussion having to do with the standing, also answers the question under this interest prong of the test. As a result of the legal standing of the Movants there is as a result both a practical and legal conclusion this ongoing action may impair or impede their individual ability to protect their interest.

### ADEQUATE REPRESENTATION

 For purposes of determining Intervention of Right it would seem the crucial and determinative test is the one of adequacy of representation. It is abundantly plain these Movants are not aligned with

the School District interests, and are resistent to the February, 1991 reorganization plan. Thus, the question distills itself down to whether or not the Government will adequately represent the interest of these Movants.

There are basically three (3) areas open to the Movants to demonstrate their interest will be inadequately represented by the Government. The Movants may show (1) there is a collusion between the Government and the School District, (2) the Government has an interest adverse to those of the Movants, or (3) the Government has failed in the fulfillment of its duty, *Martin v. Kalvar Corporation*, 411 F.2d 552, 553 (5th Cir.1969) and *United States v. Louisiana*, 90 F.R.D. 358, 363 (E.D.La.1981); and in accord therewith *United States v. Board of School Commissioners the City of Indianapolis*, 466 F.2d 573, 575 (7th Cir.1972) *cert. den.* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

The Courts have taken many approaches to the issue of intervention. One of the tests is whether or not the issue sought to be presented by Movants are currently known to the Court and the parties in the initial suit. If the parties from the original action are aware of the issues and are completely competent to represent the interests of the new group, then the Court should deny intervention, *Adams v. Baldwin County Board of Education*, 628 F.2d at 896, and *Hines v. Rapides Parish School Board*, 479 F.2d at 765. Knowledge of the issues is known to the Government.

Thus, there are three (3) attacks the Movants might make to prove inadequate representation. The first is collusion. No evidence has been offered to show there is any collusion between the School District and the Government. The second would be, the Government and the Movants have adverse interests. However, at the Hearing, it was conceded by the Movants, they and the Government both seek desegregation of the school system. This is their common ultimate goal. Thus, the only possible adversity lies along the lines the Movants are opposing only certain facets of the reorganization plan, and *perhaps* will have an argument with the Government over the specifics of the reorganization plan. However, arguments with regard to elements or the road map of the plan are not sufficient to show inadequate representation, *Valley v. Rapides Parish School Board*, 646 F.2d 925 (5th Cir.1981), *remanded on other grounds*, 653 F.2d 941 (5th Cir.1981), *cert. den.* 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1981), *case history on other grounds see* 702 F.2d 1221, *reh. den.* 705 F.2d 112 and 707 F.2d 115, *cert. den.* 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256.

This area, like the others as already mentioned, contains no bright line test. However, in *United States v. South Bend Community School Corporation*, 692 F.2d 623 (7th Cir.1982) there are some meaningful and clarifying discussions. The Seventh Circuit said even though a proposed intervenor, like these Movants might be, "less prone to agree to the facts and might take a different view of the applicable law does not mean the School Board did not adequately represent the interests of the intervenor or in the litigation", 692 F.2d at Pg. 627. The legal cite for this conclusion was to the *United States v. Perry County Board of Education*, 567 F.2d 277, 280 (5th Cir.1978). The Seventh Circuit also noted the proposed intervenors in their case, like the Movants in the case at bar, conceded they and the Government have a similar objective which is a system-wide desegregation of students. Thus, the only disagreement was with respect to the "road map" to be used to achieve this laudable goal, 692 F.2d at Pg. 628.

No matter which of the factors Movants seek to rely on, whether adversity of interest, collusion, or nonfeasance there is a presumption which arises the interests are adequately represented when the Movants and the Government have the same ultimate objective, *International Tank Terminals Inc. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir.1978). It is not a situation where there is no one in the case looking after the interest of these minority students. In *Bradley v. Milliken*, 620 F.2d 1143, 1156 (6th Cir.1980) *cert. den.* 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980)

intervention was permitted because there were *no* parties representing the interest of Hispanic students with regard to being victims of de jure segregation.

In *Bush v. Vitema, supra,* our Circuit in addressing the adequate representation prong of the test spoke in terms of a minimal showing of inadequate representation. However, the Court noted it is not so minimal as to be treated as writing it out of the rule. *Bush v. Vitema,* 740 F.2d at Pg. 355 noted even with the minimal standard when the movant seeking intervention has the same ultimate objective as a party to the suit, then a *presumption* arises the interests *are adequately represented.* In *Bush v. Vitema,* 740 F.2d at Pg. 356, the Court specifically noted even though the interest of the Movants and the Government might clash in some future context this does not demonstrate the necessary adverse interest in the present suit. *Bush v. Vitema,* 740 F.2d at Pg. 350, went through a list of what the case then before the Court was not. It squarely fits the present case. First, the Court noted it was not a case in which the Government had taken a position in direct opposition to the proposed intervenor. Second, it was not a suit in which an existing party had not voiced the movant's concerns. Third, it was not a case where the movants had a defense not available to the Government. Fourth, it is also not a suit in which no party views the movants' claims favorably. *Bush v. Vitema* concluded by saying the case was more closely aligned with those in which the Court has determined the burden of showing adequacy of representation has not been met. The Court spoke in terms of the movants having to show they are "without a friend in this litigation", 740 F.2d at Pg. 358. The *Bush v. Vitema* Court specifically noted the possibility of future settlement does not standing alone prove inadequate representation. The Court used the language which is akin to road map, facet, elements, etc., when it said "tactical differences" do not make the representation inadequate, 740 F.2d at Pg. 358. In *United States v. Coffee County Board of Education,* 134 F.R.D. 304, 310 (S.D.Ga.1990), the Court noted the failure even to conduct

personal interviews of the very parties moving to intervene does not show nonfeasance with regard to adequacy of representation.

Mrs. DeLeon, a previous Intervenor in this case and presently a elected School Trustee, also testified. Her testimony centered around the location of the Cavazos Junior High School. It has to be of interesting note the Consent Decree, which resulted in the Order of May, 1988, which established the procedures for determining when and where to build the Cavazos Junior High School was a part of Mrs. DeLeon's participation as an Intervenor. This Consent Decree was one she agreed to which permitted exactly what has been done with regard to the location of Cavazos Junior High School. Thus, her testimony is impeached, at least with regard to her opposition to the reorganization plan wherein it, through a Court Order, selects the site for Cavazos Junior High School. The selection of a site for a school is not one which comes within the purview of a Federal Court unless it has an impact on desegregation, *United States v. Perry County Board of Education,* 567 F.2d 277, 280 (5th Cir.1978). It would be presumed, since the Consent Decree has been approved by the Court, the location of Cavazos Junior High School within the defined geographic area would not have an impact on the current desegregation plan of the School District. Whatever arguments Linda DeLeon and Dr. Spikes might have with the exact location of the Junior High School, neither testified in their opinion it has some adverse impact on desegregating the School District by virtue of its geographic situs alone.

In the arguments after the Hearing the Movants urged four (4) grounds as creating a need to permit them to Intervene of Right. The Movants urged (1) they have special local knowledge of the local situation, (2) they are uniquely interested because it involves their own children, (3) they have local resources, and (4) they have the time and the interest to carry on this litigation. Conceding, arguendo, all of these factors are true, this still does not prove the Government is giving inadequate

representation. None of these arguments address the legal ground of adversity, collusion or nonfeasance, and these three (3) are the *only* provable legal grounds which will dictate intervention, *Martin v. Kalvar Corporation, supra.*

The Government filed its response on March 21, 1991 to the February reorganization plan. In summary the Government's answer said there are many facets of the proposed reorganization plan on which they needed additional information. Movants seek to convert this request for additional information into a finding the delivery of the additional information will ipso facto lead to the Government's agreement to the reorganization plan. However, the closing prayer of the Government was "this Court not approve the School Board's February 1, 1991 reorganization plan". The Government in its answer had gone over most of the reorganization plan and pointed out many of its concerns. One of those at Page 3 of their Memorandum in Support of their Answer for example was they had not been provided with sufficient "justification" to support the conversion of Dunbar from a High School to a Junior High School and for the elimination of Magnet Programs as offered as part of the High School Program. Further, they said the elimination of the Magnet Programs would limit the ability of Dunbar High School to attract non-minority students. With regard to Cavazos Junior High, the Government specifically pointed out the site location would render it difficult to attract non-minority students to the new Cavazos Junior High School. The Government specifically wanted justification for the location of Cavazos and for the duplication of its Magnet Programs being offered at other sites.

The entire approach of the Movants to prove inadequacy of representation by the Government was on the ground of nonfeasance. No evidence was offered with regard to collusion or adversity of interest. A major contention by the Movants with regard to the failure to fulfill its duty by the Government had to do with the Consent Decree governing the location of Cavazos Junior High School. The Government did not attend the Consent Decree Hearing with regard to this location, nor as concerned the counting of students for purposes of establishing by the Consent Decree Cavazos Junior High School was required to be constructed. Such evidence does not prove the Government failed to fulfill its duty. At this time there were four (4) Intervenors with adequate representation by counsel who were urging those issues and who had worked out a consent agreement with the School District for the entry of such an Order. This argument of the Movants places the Government in a Catch 22. When there are Intervenors in the case and the Government agrees they are adequately representing their own interests, and the Government steps aside to permit them to do this, then the Government is charged with nonfeasance. The Government, like any litigant where there are parties adequately represented, is permitted to acquiesce and agree to what those parties are about to achieve. Their agreement does not prove, nor even indicate nonfeasance on their part, nor does such evidence show the Government is not presently, nor has it failed in the past, to vigorously pursue the ultimate goal of integration of the School District. The Movants offered Exhibit I–4. This was a Memo written by Superintendent Mike Moses of the School District to the Board of Trustees. The Memo was dated April 23, 1991. On Monday, ʻpril 22, 1991 Bob Craig President of the Board of Trustees, Billy Caviel Vice President of the Board of Trustees, and Nancy Neal Secretary of the Board of Trustees, visited with the Government's attorneys. Mr. Brad Crawford, attorney for the School District, along with Superintendent Mike Moses, and Assistant to the Superintendent Carmyn Neely, accompanied them to the meeting. They met with Mr. Frans Marshal, who is the Assistant Attorney General representing the Government, and Mr. Nathaniel Douglas of the Justice Department. Superintendent Moses wrote a Memo after the meeting. The Movants' approach to the Memo was to utilize it to show Mr. Moses conceded the February reorganization plan was resegregrative of the School District. However, as already

noted, the position of the Movants and the School District are clearly adverse. The real value in the Memo concerning the meeting in Washington with the Assistant Attorney Generals, is it clearly demonstrates the Government had expressed many concerns about the reorganization plan. Many of those concerns coincided with those raised by the these Movants. Superintendent Moses, his assistant, the members of the Board of Trustees, and their attorney came home with a clear picture in mind. The Government had several major concerns about the resegregrative and segregative affects of at least five (5) of the items in the reorganization plan. This listing of concerns is subjectively the interpretation of Mr. Moses. There is no evidence the Government endorses his short list as its only questions and concerns. This Memo is only further evidence of the adequate representation the interests of these Movants were then receiving and are presently receiving from the Government. Exhibit I–4 comes from a party who is wanting to support the reorganization plan. It expresses the concerns which were given to the School District *by the Government.* Clearly the Government is not satisfied with the present reorganization plan. This is not to say later facts or information may not allay some Government concerns, but at least it is plain the Government will not presently agree to the reorganization plan.

I think it is abundantly plain the Movants have not shown first, there was an adversity interest between the Government and themselves. Second, they have not demonstrated or even offered any evidence of collusion between the School District and the Government which affects their interest. Finally, their real ground was one of nonfeasance or failure to fulfill duty. All the evidence in the case indicates the Government has sought to achieve the common overall goal and is clearly concerned with many of the facets of the reorganization plan. It is the Government's road map to maintain a desegregated school system in Lubbock.

I, therefore, would recommend an Order be entered finding under Rule 24(a), FRCP, the Movants have not sustained their Motion on the ground with regard to adequacy of representation. This is, they have not shown the Government will inadequately represent their interests in this proceeding. Intervention of Right should be DENIED.

## PERMISSIVE INTERVENTION

As noted, there are three (3) tests to Permissive Intervention. Timeliness has already been discussed. The second factor for Permissive Intervention under Rule 24(b), FRCP, is to show common facts and/or law. Once again, there can be no argument about this because there are common interests, both in the facts, their development and presentation, and the law. The Government and these Movants are both after the same prime objective which is desegregation of the dual system and integration into a unitary system. Thus, the final ground which is a question of prejudice to the existing parties is the only issue left under the Movants' claim to Permissive Intervention. This is a discretionary decision, *Kneeland v. NCAA,* 806 F.2d 1285, 1289 (5th Cir.1987), *cert. den.* 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987) and *Bush v. Vitema,* 740 F.2d at Pg. 359.

It is essential to consider the affect under the Permissive Intervention provisions on the existing parties, *New Orleans Public Service, Inc. v. United Gas Pipeline Company,* 732 F.2d 452, 473 (5th Cir.1984) *reh. den.* (1984), and *E.E.O.C. v. Eastern Airlines, Inc.,* 736 F.2d 635, 639 (11th Cir. 1984).

The Court may use as a basis for its consideration of Permissive Intervention, any ongoing negotiations between the present parties, *United States v. Coffee County Board of Education,* 134 F.R.D. at 310–311.

In *Garrity v. Gallen,* 697 F.2d 452, 457 (1st Cir.1982) *reh. den.* (1983) the Court said,

"Secondly, we must appraise the degree of prejudice suffered by existing parties to the litigation if the applicants were now permitted to participate...., should the applicants be allowed to intervene,

and the suit continue to remain alive in the district court, the state defendants *would, to their detriment, be compelled to expend additional public resources* in an attempt to defend their stand against the local school districts on one hand and the plaintiffs on the other. Needless to say, *the United States,* as plaintiff-intervenor, *would similarly be forced to duplicate its expenses* in efforts to ensure compliance with federal law. It is plain that intervention at this stage would prejudice all existing parties to the litigation." (Emphasis Added).

It is, thus plain the addition of these Movants, although represented by one set of counsel would multiply the number of questions to be asked and add new discussions to the negotiations to seek an agreeable and lawful reorganization plan if one is to be accomplished. As noted in *Garrity v. Gallen,* supra, intervention will also require the expenditures of additional public resources. Not only would it require more time of the lawyers representing the Government and the School District, but it also opens the door to the possible payment of attorneys fees should the Movants become intervenors and prevailing parties [2], *Texas State Teachers Assn. v. Garland ISD,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

I, therefore, recommend the Motion for Permissive Intervention also be denied, as it would operate to the prejudice of the existing parties.

### REFUSED TESTIMONY

The Movants and the School District both offered the testimony of witnesses which the Magistrate Judge refused to hear. The Movants attempted to offer the testimony of Professor Bryan Shannon, a Law Professor of Texas Tech University School of Law. They intended to have him use as a basis of his testimony a Law Review Article which was marked and attached, not as an Exhibit but for purposes of a complete record, from the Columbia Law Review.

According to the proffer made in Court by the attorney for the Movants, Professor Shannon would be testifying as to the "Reagan Agenda" with regard to school desegregation cases. Their proffer was they could prove by the many cases handled, tried, etc., while President Reagan was in charge of the Department of Justice a policy was created to not adequately represent the goals of desegregation and integration. The testimony would have been speculative opinion testimony requiring interpretation of many cases and was not relevant to any of the present issues. The ruling and excluding the testimony also took into consideration Professor Shannon had no personal knowledge of what was decided by or how it was decided in the Justice Department under President Reagan or the present Administration.

Movants were told if they had objections to this recommendation they would be permitted to take an Affidavit from Professor Shannon and attach it to their objections to demonstrate what his testimony would have been had it been permitted to be given. The Affidavit would serve in lieu of a Question and Answer Bill of Exception.

The School District attempted to offer the testimony of Mr. David Buckberry. Mr. Buckberry is a demographic expert employed by the Municipal Government for the City of Lubbock. The testimony was to be offered in support of the February, 1991 reorganization plan. However, the legality, illegality, validity or invalidity of the plan was not a question on the Motion to Intervene. Therefore, this Magistrate Judge, sua sponte, denied the School District the opportunity to offer this evidence. The School District was informed they could follow the same procedure in making objections to the Findings, Conclusions and Recommendation of the Magistrate Judge with regard to David Buckberry. They could make an Affidavit of his proposed testimony in lieu of a Question and Answer Bill of Exception and attach it to their objections to demonstrate for purposes of

---

**2.** It must be noted this School District has already paid considerable Intervenor attorneys fees in this case on a previous occasion.

the United States District Judge reviewing this Order what his testimony would have been.

One other witness, Mr. Ted Hogan, was initially offered by the Movants as an expert witness. Questions were raised about whether or not he qualified as an expert. During an overnight recess the parties were to find some case law which would prove he was or was not an expert qualified to testify. However, at the beginning of the next session the Movants indicated they would withdraw offering him as an expert witness.

I, therefore, recommend the Motion to Intervene, both on the Intervention of Right and the Permissive Intervention grounds under Rule 24, FRCP, be in all things DENIED.

The Clerk is directed to file the Findings, Conclusions and Recommendation and to send a copy of it to each attorney of record. Any party may object to the proposed Findings, Conclusions and Recommendation on or before May 28, 1991, Rule 72, Federal Rules of Civil Procedure, and Rule 4(a)(1) of Miscellaneous Order No. 6 as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas. Such party shall file with the Clerk of the Court, serve on the Magistrate Judge and on all parties, written objections, which shall specifically identify the portions of the Findings, Conclusions and Recommendation to which objection is made and shall set out fully the basis for each such objection. Objections are required to obtain a de novo review by a United States District Judge. Failure to timely file written objections to the proposed Findings, Conclusions and Recommendation contained in this report shall bar an aggrieved party from attacking the factual findings on appeal. See *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) and *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir.1982) (en banc).

It is, further Ordered, in making their objections if the Movants feel the testimony of Professor Bryan Shannon should have been considered and this is part of their objection, then they may attach to their objections an Affidavit from Professor Bryan Shannon with regard to his testimony on the "Reagan Agenda". They may also argue the Law Review Article should have been entered as evidence. It has been made a part of the record for purposes of review by the United States District Judge. It is, also Ordered, the School District may attach as part of its objections an affidavit from David Buckberry to indicate what his testimony would have been had he been permitted to testify.

DATED May 14, 1991.